The PITS, LTD., Plaintiff,

v.

AMERICAN EXPRESS BANK INTER-
NATIONAL and American Express
Bank Limited, Defendants.

No. 95 Civ. 2960 (RWS).

United States District Court,
S.D. New York.

Jan. 16, 1996.

Neal A. DeYoung, New York City, for Plaintiff.

Butler, Fitzgerald & Potter (Andrew W. Sidman, of counsel), New York City, for Defendants.

SWEET, District Judge.

In this action predicated upon claims for federal securities fraud, common law fraud, negligent misrepresentation, breach of fiduciary duty, and breach of contract, defendant American Express Bank Limited ("Limited") has moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing all of the claims against it made by Plaintiff, The Pits, Ltd. ("The Pits"), on the grounds that the Complaint fails to state a claim upon which relief can be granted. Defendant American Express Bank International ("International") has moved for an order (1) dismissing the claims against it for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (the "Exchange Act"), and common law fraud (a) pursuant to Rule 9(b), Fed.R.Civ.P., on the grounds that The Pits has failed to plead fraud with particularity or, (b) in the alternative, pursuant to Rule 12(b)(6), Fed. R.Civ.P., for failure to state a claim; (2) dismissing the claims against it for breach of contract pursuant to Rule 12(b)(6), Fed.

R.Civ.P., for failure to state a claim; and (3)(a) dismissing the claim against it for negligent misrepresentation, pursuant to Rule 12(b)(6), for failure to state a claim or, (b) in the alternative, requiring a more definite statement with respect to that claim, pursuant to Rule 12(e), Fed.R.Civ.P.

For the reasons set forth below, Limited's motion will be granted in part and denied in part. International's motion to dismiss the claims against it for violations of the Exchange Act and for common law fraud for failure to plead fraud with particularity will be granted in part and denied in part. International's motion to dismiss the claims against it for violations of the Exchange Act and for common law fraud for failure to state a claim will be denied. International's motion to dismiss the breach of contract claim will be denied. International's motion to dismiss the negligent misrepresentation claim will be denied. International's motion for a more definite statement will be denied.

### The Parties

The Pits is an off-shore corporation based in the Cayman Islands. Juris Vitols ("Vitols"), not a party to this action, was at all times relevant to this action the president, a shareholder, and a director of The Pits.

Limited is a banking entity. International is a wholly-owned subsidiary of and is controlled entirely by Limited. Both Limited and International have offices in New York. Rene Dominguez ("Dominguez"), not a party to this action, is an International employee with the title of "relationship manager."

### Prior Proceedings

The Pits filed its Complaint on April 27, 1995, alleging (1) violations of Section 10(b) of the Exchange Act and of Rule 10-b(5) promulgated thereunder, including claims based upon allegations of (a) misrepresentations and omissions, (b) unsuitability, and (c) churning; (2) breach of fiduciary duty; (3) common law fraud; (4) negligent misrepresentation; and (5) breach of contract. Defendants filed their notice of motion on July 17, 1995. Defendants had not then, nor have they yet, entered an answer to the Complaint. Oral argument was heard and the matter was deemed fully submitted on October 25, 1995.

### The Factual Allegations

On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiff's favor and against the defendants. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). Accordingly, the factual allegations set forth and considered herein are taken from the Complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motion to dismiss.

In July of 1992, Vitols, on behalf of The Pits, opened a discretionary trading account, the "U.S. Equity Account" (the "Account"), with International. Vitols placed over $970,000 into that account for the express purpose of establishing a fund of low-risk, conservative investments for his retirement and as a legacy for his children. Vitols had only limited experience with stock market investments and no understanding whatsoever of the nature of option trading or trading on the stock market index.

At the time Vitols opened the Account, Dominguez advised Vitols that The Pits' monies would be placed only into conservative, low-risk, equity investments and that the amount of the initial investment would be fully protected. Dominguez showed Vitols a document entitled "Discretionary Investment Management Guidelines" (the "Guidelines"), which stated that trading in the Account would consist entirely of purchases of stock in United States corporations with minimum capitalizations of three billion U.S. dollars. After Vitols had reviewed the Guidelines, Dominguez instructed him to initial the document. Although Vitols did not understand English well enough to understand the Agreement, he did so.

On June 28, 1994, Dominguez informed Vitols that a new team of managers had taken over the Account, and Dominguez showed Vitols another document, entitled "New Signature Portfolio", concerning the trading conducted in the Account. This doc-

ument represented that such trading was limited to "stocks of high quality companies generating superior growth characteristics in terms of profits, cash flows, and internal rates of return."

In administering the Account, Defendants traded extensively in puts, calls, and options on the stock market index. These actions constituted operation of the Account as both an option and an index account, in contravention of The Pits' stated investment objective and of the parameters set forth in the Management Guidelines and the New Signature Portfolio. Numerous trades also involved the purchase of abnormally small units of options and stock. Plaintiffs invested The Pits' monies in numerous companies with capitalizations of less than three billion dollars.

As a result of, *inter alia,* these option and small lot trades, The Pits incurred substantial losses and unreasonably high commission charges.

## *Discussion*

### I. *Legal Standards*

#### A. *Rule 12(b)(6)*

Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

#### B. *Rule 9(b)*

■ Rule 9(b), Fed.R.Civ.P., requires that in all allegations of fraud, the circumstances constituting the fraud must be stated with particularity. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir.1994); *In re Time Warner Inc. Secs. Litig.,* 9 F.3d 259, 265 (2d Cir.1993); *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444–45 (2d Cir.1971). The pleading must be sufficiently particular to serve the three goals of Rule 9(b) which are (1) to provide a defendant with fair notice of the claims against him; (2) to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits. *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987); *O'Brien v. Price Waterhouse,* 740 F.Supp. 276, 279 (S.D.N.Y.1990), *aff'd,* 936 F.2d 674 (2d Cir.1991).

■ Our Court of Appeals has required that allegations of fraud (1) adequately specify the statements made that were false or misleading, (2) give particulars as to the respect in which it is contended that the statements were fraudulent, and state the (3) time and place the statements were made and (4) the identity of the person who made them. *See McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992); *Cosmas,* 886 F.2d at 11. Finally, the Court of Appeals has held that a complaint charging fraud must assert that defendant possessed an intent to defraud or, at minimum, "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp.,* 25 F.3d at 1128 (citations omitted); *see Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds by United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989).

#### C. *Rule 12(e)*

Rule 12(e) states:

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired.

Rule 12(e), Fed.R.Civ.P.

### II. *Only the Fraud Claims Against Limited Will Be Dismissed*

■ Liability of a party standing behind the corporate veil "may be predicated either upon a showing of fraud or upon complete control by the dominating corporation that leads to a wrong against third parties." *Wil-*

*liam Passalacqua Builders v. Resnick Developers,* 933 F.2d 131 (2d Cir.1991) (citing *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.,* 909 F.2d 698, 703 (2d Cir.1990) ("New York law allows the corporate veil to be pierced *either* when there is fraud *or* when the corporation has been used as an alter ego." (emphasis in original))). Because the Complaint does not allege fraud committed directly by Limited, it can proceed only on the alter ego theory.

■ A different standard will be applied in determining whether the existence of an alter ego has been properly pled, depending on whether fraud or another claim is levelled. In *Citicorp International Trading Co. v. Western Oil & Refining Co.,* 771 F.Supp. 600, 609 (S.D.N.Y.1991) (Sweet, J.), this Court held that a claim attempting to pierce the corporate veil between a parent and a subsidiary need comply only with Rule 8(a)'s "short and concise statement" requirement, because "the allegations in question [did] not relate to fraud." *Id.* at 608.

*Citicorp* thus accurately describes the state of the law with regard to the non-fraud claims directed at Limited, where less particularity is required than are where fraud is involved. On a motion to dismiss made pursuant to Rule 12(b)(6), all ambiguities must be construed in favor of the non-movant. The Pits' statements accord with Rule 8(a)'s requirement of a short and concise statement of the facts necessary to support its claim when so construed. Defendants argue that in *Weinreich v. Sandhaus,* 850 F.Supp. 1169 (S.D.N.Y.1994) (Sweet, J.), *amended in part,* 156 F.R.D. 60 (S.D.N.Y.1994), this Court reaffirmed the principle that in order to pierce the corporate veil, there must be a showing that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Id.* at 1178 (citation omitted). While that may be the case, *Weinreich* was delivered after trial, and, the Complaint is adequate to meet the minimal burden towards pleading this standard at this time. Thus, to the extent that the non-fraud claims against International remain viable, the non-fraud claims against Limited also will not be dismissed.

■ The particularity requirements of Rule 9(b), however, suggest a higher standard in pleading the alter ego theory. *See Citicorp,* 771 F.Supp. at 608. The claims based in fraud—securities fraud and common law fraud—require a higher degree of specificity in pleading and, therefore, those claims will be dismissed against Limited. The Pits has failed to plead sufficient facts to suggest that Limited completely dominated International's daily operations. The Complaint makes the following allegations with respect to Limited: that International is a wholly-owned subsidiary of Limited; that Limited's directors and officers are "directly involved in and in complete control of" the management of International; and that the finances and personnel of International and Limited were at all relevant times intertwined.

Although The Pits alleges that Limited and International have common officers and directors, that "commonplace circumstance" of modern business is insufficient where fraud is alleged to provide a court with a basis for piercing the corporate veil. *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.1988). The Pits argues that the account statements and internal records annexed as an exhibit to the Complaint contain indicia that International acted only as Limited's trading desk—as an instrumentality only—for its international clientele. Particularly, The Pits points to internal corporate records concerning The Pits' account, stating that they are copies for Limited as the entity involved in operating The Pits' accounts. These indicia hardly succeed in pleading the requisite dominion and control necessary to assert claim against a corporate parent. Therefore, the securities fraud and common law fraud claims against Limited will be dismissed.

### III. *The Claims Against International*

**A. *The Claim for Securities Fraud Will Be Dismissed to the Extent That It Is Based on Defendants' Alleged Misrepresentations Concerning the Capitalization of Companies Whose Securities Were Purchased for the Account***

■ In order to state a cause of action under Section 10(b) and Rule 10b–5, a plain-

tiff must plead that, in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that the plaintiff's reliance on the defendant's action caused the plaintiff injury. *In re Time Warner Inc. Secs. Litig.,* 9 F.3d 259, 264 (2d Cir.1993); *Morin v. Trupin,* 778 F.Supp. 711, 717 (S.D.N.Y.1991). The Pits bases its claim for misrepresentation and omission on two alleged acts: one of misrepresentation and one of omission.

1. ***The Claim Based Upon Alleged Misrepresentations and Omissions Will Be Dismissed Insofar as It Is Based on the Alleged Misrepresentation Regarding the Degree of Capitalization of Securities Purchased for the Account***

 a. ***The Alleged Act of Misrepresentation Regarding the Degree of Capitalization of Securities Purchased for The Account is Insufficient to Support the Claim Based Upon Alleged Misrepresentations and Omissions***

The Pits alleges upon information and belief that before Vitols opened the account, Dominguez and the Guidelines misrepresented the level of capitalization of the stocks which would constitute the investments in the Account and that subsequently, in contradiction of these representations, securities were purchased for The Pits with capitalizations under three billion dollars. For several reasons, this claim is insufficient to support a claim of misrepresentation or omission.

 First, the misrepresentation claim is based upon information and belief. Allegations of fraud cannot be based upon information and belief, except as to matters peculiarly within the opposing party's knowledge, and, even then, to satisfy Rule 9(b), the allegations must be accompanied by a statement of facts upon which the belief is founded. *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). The wording of the Complaint is unclear, so it cannot be ascertained what part of the allegations are made on information and belief. To the extent that The Pits bases the allegations that the securities purchased for the Account were capitalized at less than three billion dollars, the Complaint is flawed. No specific instances of such securities are given, and, although account statements (the "Statements") are annexed to the Complaint, they do not reflect the levels of capitalization of the securities listed.

 The Pits has also failed to meet the requirement that it plead both loss causation—that the misrepresentation or omissions caused the economic harm in question—and transaction causation—that the violations in question caused the Plaintiff to engage in the transactions in question. *See Bennett v. United States Trust Co.,* 770 F.2d 308, 313 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Aquino v. Trupin,* 833 F.Supp. 336, 342 (S.D.N.Y.1993). As to loss causation, the Complaint contains no allegations that the alleged misrepresentation concerning the degree of capitalization caused any economic harm to The Pits. The Pits points to *McCoy v. Goldberg,* 883 F.Supp. 927 (S.D.N.Y.1995) for the proposition that when "the misrepresentation . . . both induced the purchase and related to the stock's value, it could be deemed causally related to the loss." *Id.* at 939 (*quoting Bennett,* 770 F.2d at 314, *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986)). In other words, The Pits argues that the alleged misrepresentation and omission relate to the value of the investments in issue, and therefore it has adequately pled loss causation. Yet the capitalization level of a company is not the same as, nor does it necessarily correlate with, the value of a security in that company; thus, this argument is inapposite. As to transaction causation, The Pits has failed to allege a direct or proximate relationship between the loss and the alleged misrepresentation regarding the level of capitalization. *Bennett,* 770 F.2d at 314, *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).

 The failure to specify the means by which the stocks caused a loss to Plaintiffs also indicates that The Pits has failed sufficiently to plead the element of materiality, since it has failed to allege any facts that would show why those shortfalls would have

been important to the investment decision of a reasonable investor. *See TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

For all of these reasons, the allegation of misrepresentation concerning the capitalization levels of the securities purchased for the Account lacks sufficient particularity.

**b.** ***The Alleged Act of Omission Regarding the Purchase of Options for The Account is Sufficiently Alleged to Support the Claim Based Upon Alleged Misrepresentations and Omissions***

▇▇ As a second act underlying its claim for misrepresentation and omission, The Pits alleges that International omitted to disclose properly that leveraged transactions were being conducted in the Account and that such transactions were extremely risky and would jeopardize the amount of The Pits' initial investment. The Pits alleges that had it known of the material omissions in the documents, its officers would not have placed money with International or opened the Account. This alleged omission is plead with sufficient particularity and states a claim adequately to survive a motion to dismiss.

Defendants assert that the Complaint is flawed by The Pits' failure to identify the transactions that are the subject of its claim. Yet The Pits clearly singles out in the Complaint several options trades. Further, the Statements indicate plainly on their face substantial options trading and the particular losses incurred as a result of those trades. Defendants object that it cannot be ascertained from the Complaint if some but not all options, all options, or options and other unspecified transactions make up the bulk of the Complaint and that, accordingly, the Complaint does not provide Defendants with fair notice of The Pits' claim. *See Aquino,* 833 F.Supp. at 340. The presentation of the account statements, however, presents Defendants with adequate notice of the claims against it, and its objections are unavailing.

▇▇ Defendants argue next that The Pits has failed to make any factual allegations with respect to the elements of scienter. The Pits, however, need only demonstrate that Defendants acted recklessly. *See Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 144 (2d Cir.1991); *Cosmas,* 886 F.2d at 13 ("To satisfy the scienter requirement, a plaintiff need not allege facts which show the defendants had a motive for committing fraud, so long as the plaintiff ... adequately identifies circumstances indicating conscious behavior by the defendants." (citations omitted)). Allegations that from the inception of the Account, Defendants engaged in a prolonged and continuous practice of disregarding the trading parameters represented in their Management Guidelines and New Signature Portfolio provide adequate grounds for establishing—for the purposes of this motion—the recklessness of Defendants' acts.

▇▇ Defendants argue next that The Pits has failed to plead materiality or loss causation to support the claim. They assert that no facts are plead to explain the risks allegedly associated with the trading in question or their impact on the portfolio. The account statements annexed to the Complaint indicate explicitly the losses incurred as a result of options trading, and they effectively counter Defendants' objections. The fact that trading in options is, as a general rule, riskier than trade in equities is a fact of which the Court will, for the limited purposes of this motion, take notice.

▇▇ Defendants assert that The Pits has failed to demonstrate reliance. They cite *Brown v. E.F. Hutton Group, Inc.,* 991 F.2d 1020, 1026 (2d Cir.1993), for the proposition that the Statements placed The Pits on notice and thereby preclude The Pits' claims as a matter of law. *Brown* is inapplicable, however, because the documents here, unlike those in *Brown,* did not contain risk disclosures, a crucial element of the *Brown* analysis. In any event, The Pits alleges that Dominguez withheld a number of statements from Vitols, and that nothing was ever presented to Vitols which refuted the representations made by Dominguez or the misstatements set forth in the Guidelines or the New Signature Portfolio regarding options trading. Since the documents omit any reference to non-equity trading, it must be presumed that Vitols justifiably relied on the misrepre-

sentations. *See Keenan v. D.H. Blair & Co.,* 838 F.Supp. 82, 87 n. 2 (S.D.N.Y.1993).

### 2. *The Claim Based Upon Unsuitability Will Not Be Dismissed*

█ The claim based upon unsuitability is stated with sufficient particularity and adequately states a claim. The elements of an unsuitability claim under Section 10(b) are that (i) the securities purchased were not suited to the buyer's needs; (ii) the defendant knew or reasonably believed the securities were not suited to the buyer's needs; (iii) the defendants recommended or purchased the unsuitable securities for the buyer anyway; (iv) with scienter, the defendant made material misrepresentations (or, owing a duty to the buyer, failed to disclose material information) relating to the suitability of the securities; and (v) the buyer justifiably relied to its detriment on the defendant's fraudulent conduct. *Brown,* 991 F.2d at 1031; *National Union Fire Ins. Co. v. Woodhead,* 917 F.2d 752, 757 (2d Cir.1990).

█ Defendants argue that The Pits has failed, counter to Rule 9(b), to identify the transactions in question and the securities involved, *Franks v. Cavanaugh,* 711 F.Supp. 1186, 1190 (S.D.N.Y.1989), *modified,* No. 88 Civ. 2121, 1989 WL 58085 (S.D.N.Y. May 24, 1989), and that The Pits has made conclusory allegations regarding the allegedly inappropriate investments, rather than alleging facts to show that the quality of the investments when they were purchased deviated from its investment goals. Defendants note that the mere fact that certain investments declined in value after they were bought does not mean that the investments were unsuitable. *Keenan,* 838 F.Supp. at 87. Defendants are correct with regard to the stocks with capitalizations of under three billion dollars. However, the Complaint adequately identifies the transactions or securities that are the subject of the rest of the unsuitability claim, in that specific examples of options trading are itemized.

Defendants argue further that the Complaint does not allege facts to show how stock options transactions or stock in companies capitalized at less than three billion dollars was unsuitable, particularly in the context of the portfolio as a whole. The Complaint is sufficient, however, in that it pleads that the options transactions were incompatible with its objectives by being too risky. This is not so conclusory an allegation as to fail to survive a motion to dismiss.

█ Defendants protest further that The Pits inadequately pleads scienter. It is alleged, however, that International knew that the trading in the Account was unsuitable and that the trades were made by International with the intent to defraud The Pits or, at least, with reckless disregard for its interests. It is true that the Complaint does not contain facts to show what role Dominguez played with respect to the Account after it was opened, whether International knew or should have known that any securities bought for the Account were unsuitable for The Pits, that International bought unsuitable securities for the account notwithstanding such knowledge, that International acted with a strong inference of fraudulent intent, or that any losses incurred by The Pits were proximately caused by the purchase of unsuitable securities. Yet, as noted above, scienter need only be pleaded minimally, and The Pits has met that burden.

### 3. *The Claim Based Upon Churning Will Not Be Dismissed*

█ In order to state a churning claim under the antifraud provisions of the federal securities law, a plaintiff must allege the following three elements: (1) that the trading in his account was excessive in light of his investment objectives; (2) that the broker exercised control over the account; and (3) that the broker acted with intent to defraud or with willful or reckless disregard for the interests of his client. *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 639 F.Supp. 1391, 1394 (S.D.N.Y.1986); *see also Moran v. Kidder, Peabody & Co.,* 609 F.Supp. 661, 666 (D.C.N.Y.1985); *Franks,* 711 F.Supp. at 1190; *Siegel v. Tucker,* 658 F.Supp. 550, 553 (S.D.N.Y.1987). For the purposes of this motion, The Pits has adequately met this requirement. Defendants argue that it is not sufficient for a plaintiff simply to make conclusory allegations of churning and to append account statements to the complaint. Rather, they argue, a

plaintiff must set forth facts that permit a determination of whether or not the trading was excessive. *Moran,* 609 F.Supp. at 666. Moreover, they note, in order to satisfy the requirements of Rule 9(b), the complaint must set forth the nature, amount, and date of the securities transactions in question, and facts sufficient to permit the calculation of the turnover ratio of the account and/or the percentage of the account value paid in commissions. *Siegel,* 658 F.Supp. at 553–54.

The Pits has adequately met this burden. First, The Pits has itemized several examples of small lot trading. Second, under the circumstances, The Pits has given Defendants adequate notice of the transactions by annexing to the Complaint all of the account records supplied by the Defendants and by specifying the nature of the transactions alleged to constitute churning. The Pits asserts, and it must be assumed for the purposes of this motion, that it cannot determine the commissions from the statements, because Defendants have failed to comply with The Pits' requests for information on the commissions, and that information is exclusively within Defendants' possession. Defendants counter that the statements reflect the total amount charged or credited for each trade, the number of shares or contracts bought or sold, and the unit cost for each share or contract, and that the commission data are thus accessible to The Pits. Yet lack of commission data has been held not to invalidate a claim for churning where an investor was not provided commission information and where "since defendants initiated all the trades.... they [were] clearly in a position to compute any statistic they wish[ed]." *Frota v. Prudential–Bache Secs., Inc.,* 639 F.Supp. 1186, 1191 (S.D.N.Y.1986).

### IV. *The Claim for Common Law Fraud Will Be Dismissed Only Insofar as It Rests on the Alleged Misrepresentations Regarding the Level of Capitalization of Companies Whose Stock Was Purchased for the Account*

 Five elements are necessary to sustain a claim in fraud under New York law: (1) misrepresentation of a material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance. *May Dep't Stores Co. v. International Leasing Corp.,* 1 F.3d 138, 141 (2d Cir.1993); *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970–71 (2d Cir.1987); *Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969). The elements of common law fraud are, therefore, essentially the same as those which must be alleged in order to establish a claim under Section 10(b) and Rule 10b–5.

Defendants assert that The Pits has failed to plead these elements with the particularity necessary to establish a claim under Section 10(b) or Rule 10b–5 and that, therefore, the common law fraud claim suffers from the same deficiencies.

For the reasons discussed above, the common law fraud claim will be dismissed with regard to the alleged misrepresentations regarding the stocks with capitalizations of under three billion dollars, but the claim will not be dismissed with regard to the other alleged misrepresentations.

### V. *The Claim for Breach of Contract Will Not Be Dismissed*

 A claim for breach of contract must allege the terms of the contract, each element of the alleged breach, and the resultant damage to the plaintiff. *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 286 (S.D.N.Y.1991). The Pits has adequately met this burden. The Complaint describes the terms of the Agreement, indicates which acts constituted breach of those terms, and states the resultant damage. Defendants seem to protest that The Pits does so by incorporating earlier paragraphs into its statement of this claim. Such objections as to form are unavailing.

Defendants point to the Agreement's clause stating that International "shall not be liable for any loss incurred in connection with [its] advice, actions or otherwise when [it has] acted in good faith and without gross negligence." Because the contract claim does not allege bad faith or gross negligence, they assert, the breach of contract claim fails

to state a claim. However, Plaintiffs have alleged fraud, which could be held to constitute bad faith, and they have alleged negligent misrepresentation, which could be held to constitute gross negligence.

For these reasons, the breach of contract claim will not be dismissed.

## VI. *The Claim for Negligent Misrepresentation Will Not Be Dismissed*

 Under New York law, the elements of negligent misrepresentation are: (1) carelessness in imparting words (2) upon which others were expected to rely (3) upon which they did act or failed to act (4) to their damage; further, (5) the author must express the words directly, with knowledge they will be acted upon, to one whom the author is bound to by some relation [of] duty or care. *In re Drexel Burnham Lambert Group, Inc.*, 151 B.R. 49 (S.D.N.Y.1993) (citing *White v. Guarente,* 43 N.Y.2d 356, 401 N.Y.S.2d 474, 478, 372 N.E.2d 315, 319 (1977)).

Defendants object that The Pits has failed to allege any misrepresentations by International, except to state so generally by incorporating earlier paragraphs by reference. Again, this objection is unavailing. Construing all ambiguities in favor of The Pits, it has adequately pled the claim for negligent misrepresentation, and it will not be dismissed.

Defendants have also moved under Rule 12(e) for an order requiring The Pits to state this claim with greater specificity. The motion has not, in accordance with Rule 12(e), pointed out the details desired. Further, the Pits has stated its claim with substantial specificity. The motion for a more definite statement will, therefore, be denied.

### Conclusion

For the reasons set forth above, Limited's motion to dismiss all of the claims against it pursuant to Rule 12(b)(6) for failure to state a claim will be granted in part and denied in part. Specifically, the claims against Limited for securities fraud and common law fraud are dismissed with leave granted to replead within twenty days. The claims against Limited for breach of fiduciary duty, breach of contract, and negligent misrepresentation are not dismissed.

International's motion to dismiss the claims against it for violations of the Exchange Act and for common law fraud pursuant to Rule 9(b), Fed.R.Civ.P., for failure to plead fraud with particularity will be granted in part and denied in part. Specifically, the claims against International for securities fraud and common law fraud based on International's alleged misrepresentation with regard to the capitalization of stocks which would be purchased for the Account will be dismissed with leave granted to replead within twenty days. The other claims against International for securities fraud and common law fraud will not be dismissed. International's motion to dismiss those claims pursuant to Rule 12(b)(6) for failure to state a claim will be denied.

International's motion to dismiss the claim against it for breach of contract pursuant to Rule 12(b)(6) for failure to state a claim will be denied. International's motion to dismiss the claim against it for negligent misrepresentation pursuant to Rule 12(b)(6) for failure to state a claim will be denied. International's motion for a more definite statement with respect to that claim pursuant to Rule 12(e), Fed.R.Civ.P., will be denied.

It is so ordered.