**Julie WIEDIS and Equity Trust Company, Custodian f/b/o Julie Wiedis Ira, Plaintiffs,**

v.

**DREAMBUILDER INVESTMENTS, LLC, Peter Andrews, Greg Palmer and Elizabeth Eiss, Defendants.**

**16 Civ. 9254**

United States District Court, S.D. New York.

Signed July 17, 2017

Filed 07/18/2017

Attorneys for Plaintiffs, DIAZ, REUS & TARG, LLP, 1050 Connecticut Avenue, N.W., Suite 500, Washington, D.C. 20036, By: Richard N. Wiedis, Esq.

Attorneys for Defendants, VERNER SIMON, 30 Wall Street, 8th Floor, New York, NY 10005, By: Paul W. Verner, Esq.

## OPINION

Sweet, D.J.

Defendants Dreambuilder Investments, LLC ("DBI"), Peter Andrews ("Andrews"), Greg Palmer ("Palmer") and Elizabeth Eiss ("Eiss") (collectively, the

"Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6), Rule 9(b), and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78 u–4(b)(1)—(3)(A), to dismiss the complaint of Plaintiffs Julie Wiedis ("Wiedis") and Equity Trust Corporation, Custodian F/B/O Julie Wiedis ("Equity Trust") (collectively, the "Plaintiffs") seeking to recover sums alleged due under certain promissory notes (the "Complaint").

Based upon the conclusions set forth below, Defendants' motion to dismiss the securities claim is granted, Defendants' motion to dismiss the state claims is denied, and Plaintiffs are granted leave to replead within twenty-one (21) days.

## Prior Proceedings

On November 30, 2016, Plaintiffs filed their Complaint, (Dkt. 1), which was amended on December 14, 2016, (Dkt. 20), and alleges four causes of action: breach of contract on promissory notes, common law fraud, and securities fraud in violation of Sections 10(b) and 17(a) of the Securities Act and Rule 10(b)(5).[1]

The Complaint sets forth the following allegations, which are assumed true for the purpose of this motion to dismiss. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

Wiedis is a Princeton, New Jersey resident. (Compl. ¶ 2.) Equity Trust is located in Westland, Ohio, and is an Individual Retirement Account ("IRA") custodian that held retirement savings Wiedis withdrew to invest with DBI. (Compl. ¶¶ 3–4.) Andrews is a New York City resident and the Chief Executive Officer ("CEO") of DBI. (Compl. ¶ 5.) Palmer is a Kingston, New Hampshire resident and a member of DBI. (Compl. ¶ 6.) Eiss is a New York resident and was DBI's Chief Operating Officer ("COO") from 2007 to 2012. (Compl. ¶ 7.)

In the second half of 2008, Wiedis made loans with DBI, $50,000 of which came from her Equity Trust IRA. (See Compl. ¶ 11–13.) In exchange for these loans, DBI and Andrews provided Wiedis with debt security agreements entitled "Promissory Note and Security Agreement" ("PNSA"), one dated August 8, 2008, in the amount of $30,000 and another dated November 1, 2008, in the amount of $20,000. (Compl., Exs. 1–2.) These PNSAs had interest rates of 14% and 18% respectively and each had a term of twenty-four months. (Compl. ¶¶ 15–16.) These PSNA loans were stated by DBI to be collateralized by DBI's ownership interests in mortgage notes, some of which Wiedis could access from a DBI online portal. (See Compl., Exs. 1–2.)

On October 8, 2008, Wiedis made a loan of $8,000 with DBI, which came from her savings. (Compl. ¶¶ 26–27.) In exchange for this loan, Wiedis received a similar PNSA (the "$8,000 PNSA"). (See Compl. ¶ 28.) The $8,000 PNSA has similar terms to the other PNSAs, such as 18% interest rate per annum for a term of twenty-four months, though it was not allegedly viewable on the DBI online portal. (See Compl. ¶¶ 27–28; see Compl. Exs. 4–5.)

In May 2009, prior to either the $30,000 or $20,000 PNSA reaching maturity, DBI "rolled-over" or combined the two loans into a single $50,000 PNSA (the "$50,000 PNSA"). (Compl. ¶ 20.) The $50,000 PNSA had a term of two years and an interest rate of 18% per annum. (Compl. ¶ 20.)

According to the Complaint, the purchased Notes had the following maturity dates: the August 1, 2008, Note matured

---

1. Plaintiffs have voluntarily dismissed their claim for securities fraud in violation of Section 17(a) of the Securities Act. (See Dkt. 35.)

on September 26, 2010; the October 1, 2008, Note matured on November 22, 2010; the November 1, 2008, Note matured on March 26, 2010[2]; and the May 1, 2009, Note matured on June 15, 2011. (See Compl. ¶¶ 15, 16, 21, 28.)

When Wiedis entered into these PNSAs with Defendants, Plaintiffs allege that the following representations by Defendants were made knowingly false: that Wiedis never had an actual enforceable legal right in the supposed collateral securing the PNSAs, (Compl. ¶¶ 18, 24); that Wiedis would earn and be paid 18% interest on the PSNAs, (Compl. ¶¶ 20, 76); and that Defendants would pay costs associated with collection on the PNSAs, including reasonable attorney's fees, (Compl. ¶¶ 23, 76).

In September 2009, DBI changed its loan security structures, specifically by converting loans in debt owned by DBI into equity in an investment fund overseen by DBI and others, a proposal which DBI promised was "secure" and offered "high-yield returns." (Compl. ¶¶ 33, 38; see Compl. ¶¶ 33–40.) In an September 8, 2009, email signed by Andrews and Eiss, Defendants described some of the DBI changes:

> [DBI] is making changes to its investment security structure and how our investors are secured. These changes are the result of launching out Distressed Mortgage Fund and the associated shift in ownership of the assets we manage. Until now, all assets were solely owned by DBI and could be directly pledged as security to individual investors. Going forward, all assets purchased and managed by DBI are owned jointly by DBI (the majority owner) and our partners in the fund. As a result, our

investors can no longer be secured directly by individual loans and instead will be secured by the entity that owns the individual loans.

(Compl. ¶ 34; Compl., Ex. 5.) Plaintiffs allege that, around October 16, 2009, as part of these changes, Eiss spoke with Wiedis over the phone and informed Wiedis that she was required to relinquish her secured interest in the $50,000 and $8,000 Notes securing her PNSAs in exchange for shares in a newly-made fund of unspecified assets. (Compl. ¶ 40.) The Complaint does not indicate whether Wiedis accepted or contracted such an agreement. (See Compl. ¶ 40.)

Plaintiffs allege that Defendants omitted material facts about the new investment arrangement, including, but not limited to: details about how Wiedis' money would actually be invested; when interest payments would be made; how the payment amounts would be calculated; the number of other investors who would have prior interests to collecting payments before Wiedis; and specific details concerning when and how Wiedis would receive repayment of her investment principal. (See Compl. ¶ 39.) Plaintiffs further allege that DBI practices failed to keep true, complete, and accurate books and records showing assets and liabilities, including the amounts owned to various investors. (Compl. ¶ 63.)

From 2010 through 2014, Plaintiffs point to the following statements made by Andrews, Palmer, and Eiss which they allege were false and misleading:

February 12, 2010 (Email from Andrews and Eiss): "We are also designing a program by which our investors will be

---

**2.** It is curious that the Complaint expressly states this Note's maturity date as earlier than twenty-four months after the effective date of the Note. Based on the language of this Note, the maturity date is more likely to have been in December 2010. Regardless, choosing between these two dates would result in the same resolution of the instant motion.

compensated for ... interest payment delays." (Compl., Ex. 6);

April 1, 2010 (Email from Andrews and Eiss): "DBI has continued to maintain its strong performance into 2010." (Compl., Ex. 7);

August 3, 2012 (Email from Andrews): "All DBI investors continue to earn interest on all outstanding principal until such time as all principal is repaid." (Compl., Ex. 8);

September 30, 2013 (Email from Andrews): "[T]he Company [DBI] is growing rapidly under our new capital structure and in partnership with our new investor.... We are on pace to do more in revenue and new acquisitions in the last half of 2013 than in any full year previously." (Compl., Ex. 10);

April 1, 2014 (Email from Andrews): Andrews told Wiedis that DBI "had the funds to repay her today," but there were "different levels of investment." Defendants did not have the funds "to pay all of the investors at [her] level," and "therefore we cannot pay you before we pay them." (Compl., Ex. 12).

Following the September 2009 restructuring, Defendants continued to modify its investment structure, investment terms and conditions, and timing for when to make payments, at times without providing notice to investors. (See Compl. ¶ 41.)

Plaintiffs allege that Andrews and Palmer repeatedly acknowledged to Wiedis DBI's debt to her, but falsely assured her that "interest would continue to accrue in the meantime" of DBI paying Wiedis her investment principal (Compl. ¶ 51.) Defendants also created and distributed false account statements to investors like Wiedis to lead them to believe that interest was accruing in investors' accounts, although Plaintiffs alleges DBI was not actually accruing or setting aside funds to make the interest payments. (Compl. ¶ 43.) Defen-

dants continued to make small, sporadic payments to Wiedis in differing amounts, although none fully paid Wiedis what she was owed under the terms of the Notes, (Compl. ¶ 53), which Plaintiffs claim lulled Wiedis into a false sense of security about the status of her loans, (see Compl. ¶ 54).

In December 2015, Wiedis retained counsel and sent another demand letter to DBI for repayment on her loan principal. (Compl. ¶ 56.) Around this time, although Wiedis was not aware, Defendants were settling similar litigations with situated investments with DBI. (Compl. ¶ 57.)

In June 2016, Defendants made additional allegedly false representations about their investment position in DBI's investor update, including describing assets available to DBI to repay investors and the statement that: "[I]t is also certain that, based on the remaining value of the portfolio, DBI now has the means to fully repay its investors and continues to be committed to doing so." (Compl. ¶¶ 58–59.)

In August 2016, Defendants represented to Wiedis that while they owed her at least $91,893, they were unable to immediately satisfy its obligations to Wiedis, despite having allegedly made lump sum payments to the other, similarly situated investors pursuant to litigation settlement agreements. (Compl. ¶ 61.) In November 2016, Andrews wrote Wiedis promising to pay some of her investments over an extended period of time, but not Wiedis' costs, expenses, or reasonable attorneys' fees, but never sent Wiedis a written settlement agreement. (Compl. ¶ 62.) At present, Defendants have not returned Wiedis' $58,000 investment principal or any costs and expenses associated with enforcement of the Notes though have paid interest payments totaling approximately $33,800. (Compl. ¶¶ 53, 55.)

## The Applicable Standards

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to 'state' a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557, 127 S.Ct. 1955 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" Munoz–Nagel v. Guess, Inc., No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)); Prince v. Madison Square Garden, 427 F.Supp.2d 372, 384 (S.D.N.Y. 2006); Williams v. Calderoni, 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012). The pleadings, however, "must contain something more than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citation and internal quotation omitted).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

Section 10(b) imposes civil liability on any person who uses "any manipulative or deceptive device or contrivance" "in connection with the purchase or sale" of any security. 15 U.S.C. § 78j(b). Rule 10b–5 makes it unlawful for "any person ... to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5.1

To state a claim under Section 10(b) and Rule 10b–5, a plaintiff must plead that defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 172 (2d Cir. 2005) (quoting In re IBM Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998)) (internal quotation marks omitted). Such claims are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA.

Rule 9(b) requires that the plaintiff "state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). To satisfy this requirement, the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotation marks and citation omitted). While

"intent, knowledge, and other conditions of mind may be averred generally," a plaintiff must allege sufficient facts to create a "strong inference" of scienter. Kalnit v. Eichler, 264 F.3d 131, 137–38 (2d Cir. 2001).

**Defendants' Motion to Dismiss the Securities Claim is Granted**

■ Plaintiffs have alleged securities fraud violations under Sections 10(b) of the Securities Act and Rule 10(b)(5). Defendants have moved to dismiss these claims as time-barred under the applicable statutes of limitations and repose. A district court may consider timeliness on a motion to dismiss when the circumstances are "sufficiently clear on the face of the complaint and related documents as to make the time-bar ruling appropriate on a motion to dismiss." Arco Capital Corps. Ltd. v. Deutsche Bank AG, 949 F.Supp.2d 532, 543 (S.D.N.Y. 2013) (quoting LC Capital Partners, LP v. Frontier Ins. Grp., Inc., 318 F.3d 148, 157 (2d Cir. 2003)). For the following reasons, Defendants' motion is granted.

■ Securities fraud claims brought under Section 10(b) of the Securities Exchange Act are subject to the earlier of a two-year statute of limitations and a five-year statute of repose. See 28 U.S.C. § 1658(b). The statute of limitations begins running when "a reasonably diligent plaintiff would have discovered the facts constituting the violation." Sissel v. Rehwaldt, 519 Fed.Appx. 13, 15–16 (2d Cir. 2013) (quoting Merck & Co. v. Reynolds, 559 U.S. 633, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010)) (internal quotation marks omitted). Discovery includes constructive or inquiry notice, as well as actual notice. Newman v. Warnaco Grp., Inc., 335 F.3d 187, 193 (2d Cir. 2003) (citation omitted). A duty of inquiry arises "[w]hen the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." Dodds v. Cigna Secs., Inc., 12 F.3d 346, 350 (2d Cir. 1993). By contrast, the statute of repose begins running from the "time that the allegedly fraudulent representations were made." In re Longtop Fin. Techs. Ltd. Sec. Litig., 939 F.Supp.2d 360, 378 (S.D.N.Y. 2013) (citations omitted). The repose period is a fixed statutory cutoff, independent of a plaintiff's awareness of the violation and, not subject to equitable tolling. See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

Thus, the question of timeliness generally turns on when the violation occurred, and when Plaintiffs can be said to have discovered the facts constituting the violation.

■ In the present case, whether the claims would survive under the two-year statute of limitations is unnecessary because, under the statute of repose, the claims must be dismissed. The statute of repose "begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 102–03 (2d Cir. 2004). The parties dispute what constitutes a "triggering event"—specifically, whether the statute of repose commences at the time of the defendant's last misrepresentation, Plaintiffs' position, or whether at the time the relevant securities were purchased, Defendants' position. Each side cites authority within this circuit pulling in its respective directions.

Fatal to Plaintiffs, however, the Second Circuit has already answered this precise question: "[t]he ... statute of repose in federal securities law claims [under Sec-

tion 1658(b) ] starts to run on the date the parties have committed themselves to complete the purchase or sale transaction." Arnold v. KPMG LLP, 334 Fed.Appx. 349, 351 (2d Cir. 2009) (internal quotation marks and citation omitted), cert denied, 558 U.S. 991, 130 S.Ct. 503, 175 L.Ed.2d 348 (2009). In making its determination, the Arnold Court expressly rejected Plaintiff's position. See id. ("Plaintiff's contention that the period of repose begins to run at the time of the last alleged misrepresentation (even when made after the final purchase or sale of the securities) ignores the applicable limitations period, and thus, is devoid of merit.")

Plaintiffs argue Arnold, as a summary order, has no precedential effect, and that the Second Circuit later undermined Arnold in City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc., 637 F.3d 169 (2d Cir. 2011), by discussing statutes of repose without applying Arnold. See id. at 176. Both arguments fail.

▇▇▇ Summary orders "can be instructive to district courts in resolving particular disputes, and also may be seen as highly persuasive and predictive of how the Second Circuit Court of Appeals would decide an issue in the future." Liana Carrier Ltd. v. Pure Biofuels Corp., No. 14 Civ. 3406 (VM), 2015 WL 10793422, at *4 & 5 (S.D.N.Y. Aug. 14, 2015) (collecting cases), aff'd, 672 Fed.Appx. 85 (2d Cir. 2016). City of Pontiac principally focused on the definition of "inquiry notice" in the context of

recent a Supreme Court decision; City of Pontiac does not address, or even cite, Arnold, highlighting that statutes of repose were not the focus and lanidng far from undermining the circuit court's prior reasoning. See City of Pontiac, 637 F.3d at 174–76. Other circuit courts and sister courts in this district may disagree—many of which Plaintiffs identify—but "[i]n the absence of binding authority contradicting Arnold," there is no clear reason to reject Arnold's clear language. Liana Carrier Ltd., 2015 WL 10793422, at *5 (applying Arnold); see also Arco Capital Corps. Ltd. v. Deutsche Bank AG, 949 F.Supp.2d 532, 544 (S.D.N.Y. 2013) (applying Arnold).

▇▇▇ Wiedis purchased notes from Defendants in 2009 and 2010. The Complaint in this action was filed on November 30, 2016, more than five years after each of the securities purchases were made. The claims must therefore be dismissed as time-barred. As the claims are untimely, the Court need not determine whether the claims were also adequately pled. See Gavin/Solmonese LLC v. D'Arnaud–Taylor, 68 F.Supp.3d 530, 535 (S.D.N.Y. 2014) (citations omitted), aff'd, 639 Fed.Appx. 664 (2d Cir. 2016).

### Defendants' Motion to Dismiss the State Claims is Granted in Part and Denied in Part

▇▇▇ Plaintiffs have also alleged state law claims for fraud and breach of contract.[3] Defendants have moved to dis-

---

3. Throughout the Complaint, Plaintiffs repeatedly allege that Defendants made both material misrepresentations and omissions. (See, e.g., Compl. ¶ 74.) However, "a fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information." Kaufman v. Cohen, 307 A.D.2d 113, 119–20, 760 N.Y.S.2d 157, 165 (2003) (citing Swersky v. Dreyer & Traub, 219 A.D.2d 321, 326, 643 N.Y.S.2d 33 (1996)). Plaintiffs have not put forward au-

thority demonstrating that Defendants were in a position where they were duty-bound to provide Wiedis the information Plaintiffs allege Defendants withheld. In the absence of that responsibility, under New York law, "[f]raud by affirmative misrepresentation, or actual fraud, and fraud by omission, or fraudulent concealment, are different causes of action and demand different elements of proof. Cong. Fin. Corp. v. John Morrell & Co., 790 F.Supp. 459, 469 (S.D.N.Y. 1992). Plaintiffs

miss these claims, arguing that Plaintiffs' fraud claims are time-barred and not independent of their breach of contract claims. Defendants also argue that, should Plaintiffs' federal claims be dismissed, the Court should decline exercising supplemental jurisdiction over the remaining state law claims. For the reasons below, the motion is granted in part and denied in part.

 To plead fraud under New York law, a plaintiff must allege: (1) the defendant made a material misrepresentation; (2) with intent to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation; and (4) suffered damage as a result. Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 186–87 (2d Cir. 2004). "The elements of common law fraud are, therefore, essentially the same as those required to state a claim under Section 10(b) and Rule 10b–5." Valentini v. Citigroup, Inc., 837 F.Supp.2d 304, 325 (S.D.N.Y. 2011) (quoting Pits, Ltd. v. Am. Express Bank Int'l, 911 F.Supp. 710, 719 (S.D.N.Y. 1996)).

 Under New York law, the statute of limitations for common law fraud is six years from accrual or two years from actual or imputed discovery. N.Y. C.P.L.R. § 213(8). The six-year period runs from "the commission of the fraud". Piedra v. Vanover, 174 A.D.2d 191, 579 N.Y.S.2d 675, 677 (2d Dep't 1992). The two-year period starts "the time plaintiff discovered the fraud, or with reasonable diligence could have discovered it." Aozora Bank, Ltd. v. Deutsche Bank Sec. Inc., 137 A.D.3d 685, 689, 29 N.Y.S.3d 10 (1st Dep't 2016). However, common law fraud permits a plaintiff to "file his or her claim

outside the applicable limitations period" under the doctrine of equitable tolling "if, because of some action on the defendant's part, the complainant was unaware that the cause of action existed." Long v. Frank, 22 F.3d 54, 58 (2d Cir. 1994) (noting that equitable tolling "developed in the context of fraud") (citing Dillman v. Combustion Eng'g, Inc., 784 F.2d 57, 60 (2d Cir. 1986)). "A cause of action to recover for damages for fraud cannot accrue until every element of the claim, including injury, can truthfully be alleged." Carbon Capital Mgmt., LLC v. Am. Express Co., 88 A.D.3d 933, 939, 932 N.Y.S.2d 488 (2d Dep't 2011) (alternations omitted) (quoting N.Y.C. Transit Auth. v. Morris J. Eisen, PC, 276 A.D.2d 78, 85, 715 N.Y.S.2d 232 (1st Dep't 2000)).

 "The test as to when fraud should with reasonable diligence have been discovered is an objective one." Gutkin v. Siegal, 85 A.D.3d 687, 688, 926 N.Y.S.2d 485 (2011) (citing Armstrong v. McAlpin, 699 F.2d 79, 88 (2d Cir. 1983)). "Generally, knowledge of the fraudulent act is required and mere suspicion will not constitute a sufficient substitute." Sargiss v. Magarelli, 12 N.Y.3d 527, 532, 909 N.E.2d 573, 881 N.Y.S.2d 651 (2009) (quoting Erbe v. Lincoln Rochester Trust Co., 3 N.Y.2d 321, 326, 165 N.Y.S.2d 107, 144 N.E.2d 78 (1957)). "Where it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts." Id. (quoting Trepuk v. Frank, 44 N.Y.2d 723, 725, 405 N.Y.S.2d 452, 376 N.E.2d 924 (1978)).

---

have only pled a claim for fraud, so only the affirmative misrepresentations alleged in the

Complaint are relevant for the instant motion.

As an initial matter, Plaintiffs argue that equitable tolling should permit them to bring their fraud claim outside the statute of limitations because Defendants hid material facts that made Wiedis unable to discover the fraud until many years later. Plaintiffs point to numerous statements they claim Defendants falsely made to induce Wiedis into entering into the Note agreements and in the years following the 2008 and 2009 Notes that they claim were an effort to hide their fraud, including the production of allegedly fraudulent investor account statements showing interest accruing, stating that investments would improve following the 2009 Note conversion, making small payments to lull investors into complacency, omitting material information, and settling lawsuits out of the public eye. (See Pls.' Mem. in Opp. at 32.)

Viewed in the light most favorable to Plaintiffs', the allegations in the Complaint permit tolling at this stage. Although the fact that DBI made "minimal and sporadic interest payments" over the course of six years, (Compl. ¶ 53), and, after repeated demands for repayment, continued to fail to pay Wiedis her loan principal—actions which might have suggested to some signs of trouble—it is not clear under these circumstances that, even with reasonable diligence, a plaintiff could have unearthed the actual financial conditions of their investments sufficient to bring a cause of action. Taking Plaintiffs' allegations as true, DBI was consistently providing inaccurate and reassuring investment information while being a source from which it was difficult to get clear answers, plausibly indicating that Wiedis would have been unable to determine whether her investments were ever collateralized or her investments financially sound. Put another way, while a sophisticated investor might have done otherwise, Wiedis, like the average plaintiff, was not a sophisticated investor, and

should be judged as such. See Valentini, 837 F.Supp.2d at 322 (concluding that unsophisticated investor had not "discovered" a securities fraud for purposes statute of limitations after sending defendants multiple requests for information and investment liquidation and not receiving replies).

Furthermore, unlike other situations where courts have found inquiry notice met, there was not "a wealth of public information that should have put [Wiedis] on inquiry notice of the alleged fraud" present here, Aozora Bank, 137 A.D.3d at 689, 29 N.Y.S.3d 10, and the Court is aware of "no authority placing the onus on an investor to monitor all court proceedings concerning its investments," Girozentrale v. Tilton, 149 A.D.3d 152, 161, 48 N.Y.S.3d 98, 104 (1st Dep't 2017). While the Complaint does not specifically state when Wiedis began a fulsome investigation, it is reasonable to read the Complaint, in combination with Plaintiffs' motion papers, as it occurring around December 2015, when Wiedis hired an attorney or around mid-2016, when the Complaint alleges Wiedis first learned about lawsuits against DBI. (See Compl. ¶¶ 56–57, 60–61; see also Pls.' Mem. in Opp. at 10.) These dates are within the permissible two-year statute of limitations window.

Defendants next contend that the claim of fraud is not extraneous to Plaintiffs' breach of contract claim and therefore must be dismissed. As some of Plaintiffs' fraud claims fall under an exception to this general rule, however, this argument also fails.

Under New York law, "parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or

extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir. 2007). One manifestation of this exclusion is to have the pleadings "allege misrepresentations of present fact, not merely misrepresentations of future intent to perform under the contract, in order to present a viable claim that is not duplicative of a breach of contract claim." Wyle Inc. v. ITT Corp., 130 A.D.3d 438, 439, 13 N.Y.S.3d 375 (1st Dep't 2015) (citing GoSmile, Inc. v Levine, 81 A.D.3d 77, 81, 915 N.Y.S.2d 521 (1st Dep't 2010)). This is because, "[u]nlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty." Id. (citing Deerfield Commc'n Corp. v Chesebrough–Ponds, Inc., 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986)).

■ At this stage, Plaintiffs have pled alleged misrepresentations of present fact by DBI sufficient to establish a fraud claim independent of their breach of contract claim. To be sure, certain of the statements Plaintiffs present are statements of future actions and, therefore, are unactionable, such as the alleged promises of future high-yield returns by DBI on the 2009 conversion or DBI's assertions about its future fund's liquidity, security, and payment of interest. (See Compl. ¶¶ 38, 40, 42); Coolite Corp. v. Am. Cyanamid Co., 52 A.D.2d 486, 488, 384 N.Y.S.2d 808 (1976) (noting that allegations that were "merely promises of future action" cannot sustain fraud claims). However, viewed in the light most favorable to Plaintiff, others are allegedly fraudulent statements of present fact, such as in September 2013 when DBI claimed it had refinances and acquired significant money, placing it presently in a position to increase investor distributions, (see Compl. ¶ 46), or that DBI was presently in a position in June 2016 to fully repay its investors, when shortly thereafter Wiedis was informed that was not the case, (see Compl. ¶¶ 58, 61). Based on these allegations of statements that, taken together present a strong inference that they were "made with a preconceived and undisclosed intention of not performing it," Plaintiffs have at this stage sufficiently plead their claim of fraud. Deerfield Commc'ns Corp., 68 N.Y.2d at 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (quoting Sabo v. Delman, 3 N.Y.2d 155, 160, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957)) (affirming district court's decision to deny motion to dismiss fraud claim).[4]

■ It should be noted, however, that the breach of contract claim can survive only as against DBI who, as signatory to the Employment Agreement, can be liable. See Navana Logistics Ltd. v. TW Logistics, LLC, No. 15 Civ. 856 (PKC), 2016 WL 796855, at *5 (S.D.N.Y. Feb. 23, 2016) ("[L]iability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties." (citation omitted)). The Complaint has not plausibly alleged fact sufficient to show that Andrews, Palmer, or Eiss intended personally to be bound by the contracts signed with Wiedis and, accordingly, are dismissed as to the First Claim.

Lastly, Defendants argue that the Court should reject supplemental jurisdiction over both the fraud claims and the breach

---

4. Defendants note that the damages sought by Plaintiff under their fraud claim are identical to the amount sought for their breach of contract claim. (See Defs.' Mem. in Supp. at 23.) However, no authority has been presented or located which render this fact dispositive at this stage as to whether to dismiss Plaintiffs' fraud claim as insufficiently plead.

of contract claims in the event that the Court should dismiss Plaintiffs' securities fraud claim.

Before discussing supplemental jurisdiction, it is worth preliminarily noting that Plaintiffs' breach of contract claim survives as well. To sustain a breach of contract claim, a plaintiff must prove (1) there was an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages. 24/7 Records, Inc. v. Sony Music Entm't, Inc., 429 F.3d 39, 42 (2d Cir. 2005) (citation omitted). The statute of limitations for breach of a contract under New York law is six years. C.P.L.R. § 213(2). "A cause of action for breach of contract usually accrues, and the limitations period begins to run, upon breach." Kermanshah v. Kermanshah, 580 F.Supp.2d 247, 260 (S.D.N.Y. 2008) (citing Huang v. Siam Commercial Bank Pub. Co., 247 Fed.Appx. 299, 301 (2d Cir. 2007)). "If, however, a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." Id. (collecting cases).

Here, the alleged breaches of the contracts occurred monthly during the lifetime of the Notes whenever DBI did not pay required interest payments, (see Compl. ¶ 68), and upon their maturity, at which point shortly thereafter Wiedis should have received the principal and interest owed under the Notes, (see Compl. ¶ 70). The maturity dates of the contracts ranged from 2010 to 2011, as described above. Insofar as Plaintiffs allege material breach when, upon maturity, DBI failed to pay the accrued amounts and interest, marking the latest contract breach, the May 2009 Note had a maturity date of June 2011. Plaintiffs have sufficiently pled that the owed monies have not been paid in breach of the contract. The filing of the Complaint in November 2016 was therefore properly within the statute of limitation's permissible window.[5]

As to Defendants' request that the Court decline supplemental jurisdiction over the remaining state law claims, the request is declined. The ability to retain supplemental jurisdiction over the claims is discretionary. See 28 U.S.C. § 1367(c)(3). There is no novel issue of state law present. And, most importantly, diversity jurisdiction exists as to the remaining claims: there is complete diversity of parties and the amount-in-controversy exceeds $75,000. See 28 U.S.C. § 1332. Therefore, exercising jurisdiction is proper. See Scarpinato v. E. Hampton Point Mgmt. Corp., No. 12 Civ. 3681 (JFB) (GRB), 2013 WL 5202656, at *15 (E.D.N.Y. Sept. 13, 2013) (declining jurisdiction over remaining state claims because no diversity jurisdiction existed).

## Leave to Replead is Granted

In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Although Plaintiffs have already amended their complaint once, "they have not yet had an opportunity to do so in response to an opinion of the Court. Accordingly, the Court cannot conclude that allowing Plaintiffs to amend once again would be futile." Jianjun Chen v. 2425 Broadway Chao Rest., LLC, No. 16 Civ. 5735 (GHW), 2017 WL 2600051, at *9

5. Defendants' motion papers and accompanying chart all but concede as such, despite their attempt to construe Plaintiffs' allegations, and consequently, dates of breach, otherwise. (See Defs.' Reply Mem. in Supp. at 2 & n.3.)

(S.D.N.Y. June 15, 2017) (citing <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC</u>, 797 F.3d 160, 191 (2d Cir. 2015)). An amended complaint must be filed no later than twenty-one days after the date of this opinion.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs are granted leave to replead within twenty-one (21) days.

It is so ordered.