■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v APPLE HEALTH AND SPORTS CLUBS, LTD., INC., Respondent, and THURCON PROPERTIES, LTD., et al., Appellants. [613 NYS2d 868] — Order and judgment (one paper), Supreme Court, New York County (Irma Santaella, J.), entered January 7, 1993, which, inter alia, granted the motion by the Attorney-General of the State of New York ("the Attorney-General") for summary judgment pursuant to CPLR 3212 against respondents Apple Health and Sports Clubs, Ltd., Inc. ("Apple Health") and Harold Thurman, individually and as president of respondents Apple Health and Thurcon Properties, Ltd. ("Thurcon"), and which denied appellants' motion pursuant to CPLR 401 seeking to join the executrix of the estate of Patrick J. Consalvas as a party respondent in the underlying proceeding and to stay the proceeding pursuant to CPLR 2201 pending joinder, unanimously affirmed, with costs.

Appeal from an order of the same court and Justice entered on October 29, 1992, which denied appellants' motion for reargument, unanimously dismissed as nonappealable, without costs.

The pertinent facts in the underlying special proceeding, brought by the Attorney-General pursuant to Executive Law § 63 (12) against respondent Apple Health, which operated four now defunct health clubs located in New York City, respondent Thurcon, the alleged owner of Apple Health, and respondent Thurman, the president and 50% shareholder of both companies, are set forth in People v Apple Health & Sports Clubs (80 NY2d 803, affg 174 AD2d 438), wherein preliminary injunctive relief was granted in favor of the Attorney-General restraining the appellants from withdrawing or transferring any health club funds and directing them to file a $500,000 bond.

The IAS Court here properly held respondent Thurman

individually liable for the fraudulent and illegal conduct of Apple Health under Executive Law § 63 (12), which, in affording consumer protection from deceptive and misleading practices, authorizes the Attorney-General to bring a special proceeding against any person or business that engages in repeated or persistent fraudulent or illegal conduct, while broadly construing the definition of fraud so as to include acts characterized as dishonest or misleading and eliminating the necessity for proof of an intent to defraud *(Matter of Allstate Ins. Co. v Foschio,* 93 AD2d 328, 331-332).

The Attorney-General established that Thurman, as the 50% owner and eventual sole executive director of Apple Health, not only had actual knowledge of Apple Health's fraudulent activities and unstable financial condition and imminent closing when he authorized new and extended memberships, but had personally refused to post the bond required by General Business Law § 622-a in order to protect health club members in the event the seller of the memberships defaulted, as here, and that he had personally decided to close all four Apple Health clubs without notice to their more than 5,500 members while continuing to sell memberships to consumers and to extend memberships at prices exceeding $1,000.

Thurman's contention that he was a mere officer of a corporation which performed fraudulent acts and that, as such, the IAS Court improperly pierced the corporate veil to hold him personally liable is devoid of merit since a corporate officer who participates in the commission of a tort may ordinarily be held individually responsible regardless of whether he acted on behalf of the corporation and in the course of his corporate duties *(Matter of State of New York v Daro Chartours,* 72 AD2d 872, 873). Individual corporate officers and directors are personally liable for fraud and, accordingly, for any money owed to members and any civil fines owed the State under Executive Law § 63 (12), where, as here, they personally participated in the misrepresentation or had actual knowledge of the misrepresentation *(Marine Midland Bank v Russo Produce Co.,* 50 NY2d 31, 44).

The Attorney-General therefore established that respondents Apple Health and Thurman have, by engaging in repeated fraudulent and deceptive conduct, violated the provisions of Executive Law § 63 (12), and therefore established entitlement to summary judgment for the relief demanded in the petition *(see, Matter of State of New York v Daro Chartours, supra,* at 872).

Nor did the IAS Court abuse its discretion in denying appellants' motion which sought to join the executrix of the estate of respondent Harold Thurman's deceased partner in the now defunct Apple Health clubs, Patrick J. Consalvas, as a party respondent in the underlying proceeding and additionally sought to stay the proceeding pending joinder, prior to granting summary judgment in favor of the Attorney-General as against respondents Apple Health and Thurman.

CPLR article 4, governing special proceedings, specifically provides that "[a]fter a proceeding is commenced, no party shall be joined or interpleaded and no third-party practice or intervention shall be allowed, except by leave of court" (CPLR 401). A special proceeding, as authorized by Executive Law § 63 (12), is intended as an expeditious means for the Attorney-General to prevent further injury and seek relief for the victims of business fraud (*People v B. C. Assocs.,* 22 Misc 2d 43, 45). Joinder of the estate was therefore properly denied, since the evidence adduced overwhelmingly established that Thurman, not Consalvas, was the individual responsible for the acts complained of in the amended petition and that the addition of the deceased partner's estate would unduly delay an expeditious resolution of the proceeding and unnecessarily embroil the State in what is essentially a private dispute between Thurman and the estate of his deceased partner, while further prejudicing the rights of more than 5,000 Apple club members entitled to a refund of membership fees for the unexpired period of their memberships.

We have considered the appellants' remaining claims and find them to be without merit. Concur—Sullivan, J. P., Carro, Ellerin, Asch and Tom, JJ.