■ AOZORA BANK, LTD., Appellant, v DEUTSCHE BANK SECURITIES INC. et al., Respondents. [29 NYS3d 10]—

Order, Supreme Court, New York County (Jeffrey K. Oing, J.), entered January 21, 2015, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the fraud claims, and order, same court and Justice, entered March 31, 2015, which, to the extent appealed from, denied plaintiff's motion for leave to file an amended complaint, unanimously affirmed.

This case is yet another action arising from the worldwide financial crisis that began in 2007. Plaintiff Aozora Bank, Ltd. is a Japanese commercial bank with its principal offices in Tokyo.[1] Aozora invested in complex financial products backed by mortgages, including collateralized debt obligations (CDOs).[2]

In December 2006, Aozora invested in a CDO called Blue Edge, a $1.25 billion CDO that included residential mortgage-backed securities (RMBS). Defendants Deutsche Bank Securities Inc. and Deutsche Bank AG (together, Deutsche Bank or defendants) structured and sold the CDO; Aozora bought $30 million of the CDO's Class A-3 tranche. Aozora alleges that although Deutsche Bank selected the RMBS that were to be included in the CDO, Deutsche Bank actually held negative views about those securities.

For example, Aozora alleges, Deutsche Bank's global head of CDOs, Greg Lippmann, made numerous disparaging comments internally about the RMBS included in Blue Edge, referring to them as, among other things, "weak" and "horrible." Similarly, defendants' internal emails allegedly show that Lippman and other Deutsche Bank insiders knew, and were sometimes pressured, not to disclose their negative views on RMBS in order to

---

1. The facts are taken from the complaint, which must be accepted as true for the purposes of the CPLR 3211 motion.

2. According to statements by Aozora's counsel at oral argument, Azora had a total of $430 million in CDO investments by the end of 2007.

promote client interest in defendants' CDO products. The underlying assets included in Blue Edge were subject to Deutsche Bank's approval, and Deutsche Bank generally approved third-party collateral manager selections for Deutsche Bank-arranged CDOs, even where they included the very same RMBS that defendants internally disparaged.

Beginning in late 2005, Deutsche Bank began accumulating a short position with respect to subprime RMBS in Blue Edge, and urged some of its non-CDO investor clients to do the same. According to Aozora, Deutsche Bank sold credit default swap protection on RMBS to their hedge fund clients so as to hedge those clients' exposure to the underperforming RMBS, while shifting the long position—in this case, the riskier position—to Deutsche Bank-arranged CDOs such as Blue Edge.

In connection with marketing, selling, and offering Blue Edge to investors, Deutsche Bank created, drafted, and disseminated various marketing and offering documents; these documents allegedly contained material misrepresentations, misleading statements, and omissions. Specifically, Aozora alleges, the marketing and offering documents did not disclose defendants' negative views of Blue Edge's underlying RMBS assets. The marketing and offering documents also indicated that Deutsche Bank would hold Blue Edge's collateral portfolio on its own books until closing of the CDO, thereby ensuring Deutsche Bank's selection of top-quality collateral. However, Deutsche Bank was allegedly engaged in decreasing its own RMBS exposure at the same time it was encouraging clients to invest in CDOs. Further, the marketing and offering documents indicate that at least 66.7% of Blue Edge's collateral portfolio would be prime RMBS (that is, lower risk), and less than 10% would consist of subprime RMBS (that is, higher risk). However, Aozora alleges that Blue Edge's asset pool was far riskier than Deutsche Bank represented, and that only 27% of the collateral assets were prime RMBS, while 47.6% of the portfolio consisted of riskier subprime, "midprime," and "Alt-A" RMBS.

Aozora filed a summons with notice on June 18, 2013. In its complaint, filed January 7, 2014, Aozora asserted causes of action for common law fraud, aiding and abetting fraud, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and unjust enrichment.

With respect to the claims for common law fraud and negligent misrepresentation, Aozora asserted that it reasonably relied on Deutsche Bank's misrepresentations and omissions. Specifically, Aozora alleged, it conducted its own due

diligence and risk analysis, scrutinizing, among other things, Blue Edge's collateral portfolio and its structural protections against collateral losses. Aozora stated that it also reviewed the marketing materials and concluded that the investment, as represented by Deutsche Bank, was appropriate. However, Aozora insisted, it did not know, and could not have known, that the marketing materials and offering documents contained material misrepresentations and omissions, that Blue Edge's portfolio was filled with RMBS that defendants internally disparaged, or that Deutsche Bank had understated the degree to which Blue Edge was collateralized by higher-risk, lower-quality assets. Aozora alleged that absent Deutsche Bank's misconduct, it never would have made its investment in Blue Edge, and that Deutsche Bank's misconduct caused Aozora to suffer a 100% principal loss on its investment.

Deutsche Bank moved to dismiss the complaint under CPLR 3211 (a) (5) and (7). On the motion, Deutsche Bank argued, among other things, that all of Aozora's claims were time-barred because Aozora filed its action more than six years after it bought Blue Edge and more than two years after it should have discovered the alleged fraud in the exercise of reasonable diligence. To support this argument, Deutsche Bank attached details of numerous publications, testimony, and lawsuits regarding the financial crisis; the earliest of this material was dated from March 2007—nearly seven years before Aozora commenced this action in January 2014. Indeed, Deutsche Bank noted, beginning in early 2008 it was well publicized that banks, including Deutsche Bank, were under investigation for their involvement in creating defective mortgage products. Deutsche Bank also attached excerpts from an April 13, 2011 report of the Permanent Subcommittee on Investigations of the United States Senate entitled "Wall Street and the Financial Crisis: Anatomy of a Financial Collapse" (Senate Report). Finally, Deutsche Bank attached proof that Moody's had downgraded Blue Edge to junk status in June 2008. All this information, Deutsche Bank asserted, put Aozora on notice of its claims years before it commenced this action.

In opposition to the motion to dismiss, Aozora submitted the affidavit of the general manager of its international division in Tokyo, Justin Hirsch (Hirsch affidavit). In his affidavit, Hirsch noted that his averments were not based on his personal knowledge, but on his review of Aozora's files and records. Hirsch stated that Aozora did not arrange, originate, or structure any CDOs, but rather, invested in CDOs in the United States. Moreover, Hirsch noted, plaintiff's office in New

York was small, with never more than four employees during the relevant period. The New York office primarily facilitated client services in the United States; its employees were not structured finance professionals, and were not involved in plaintiff's decision to invest in structured finance products.

According to Hirsch, when Aozora began to experience CDO losses, it believed those losses were the result of the United States subprime mortgage crisis. However, in September 2012, a former employee of Aozora contacted the bank, stating that several other banks had recently brought successful claims against structured finance arrangers and inquiring whether Aozora wanted its portfolio reviewed to determine whether it might have viable claims.

Thereafter, Hirsch stated, as part of Aozora's due diligence efforts in November and December 2012, it spoke with several United States-based law firms regarding its potential claims; in March 2013, Aozora retained its current counsel. After reviewing Aozora's investments, counsel informed Aozora that Deutsche Bank had been discussed in the April 2011 Senate Report. While the Senate Report did not mention the Blue Edge CDO by name, Hirsch asserted that Aozora's counsel "analyzed the Blue Edge CDO's asset portfolio, discovering that certain of the [RMBS] that were contained in the Blue Edge CDO portfolio were mentioned in the Senate Report." According to Hirsch, it was then that Aozora realized that it might have actionable claims against defendants, and commenced this action.

The IAS court found that Aozora's fraud claims were untimely under the two-year discovery rule. In so doing, the court concluded that Aozora was on inquiry notice of the alleged fraud by no later than April 2011, when the Senate Report was released. Indeed, the court noted, the Senate investigation of the financial crisis began in April 2010.

Further, the court found, Aozora failed to raise an issue of fact as to whether it had exercised reasonable diligence in an effort to discover its fraud claims. In that regard, the court noted that the information publicly available by 2010 should have alerted Aozora that something was amiss with its investment. Thus, the court concluded, Aozora should have begun an investigation well before it actually did. The court also specifically noted that the Hirsch affidavit failed to raise a triable issue of fact as to whether, given the circumstances surrounding

the investment and the financial crisis, Aozora had engaged in reasonable diligence.[3]

The parties do not dispute that plaintiff's fraud causes of action were not timely under New York's six-year limitations period and, to be timely, must have been commenced within two years from the time plaintiff discovered the fraud, or with reasonable diligence could have discovered it (CPLR 213 [8]).

As this Court has held, "[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him" (*CIFG Assur. N. Am., Inc. v Credit Suisse Sec. [USA] LLC*, 128 AD3d 607, 608 [1st Dept 2015]; *see also Gutkin v Siegal*, 85 AD3d 687, 688 [1st Dept 2011] ["(t)he test as to when fraud should with reasonable diligence have been discovered is an objective one"]). Thus, public reports and lawsuits of alleged fraud are sufficient to put a plaintiff on inquiry notice of fraud (*see CIFG Assur. N. Am.*, 128 AD3d at 608; *Aldrich v Marsh & McLennan Cos., Inc.*, 52 AD3d 435, 436 [1st Dept 2008], *lv denied* 11 NY3d 716 [2009]). Similarly, losses that a plaintiff sustains may put it on notice of possible fraud (*see Ghandour v Shearson Lehman Bros.*, 213 AD2d 304, 306 [1st Dept 1995], *lv denied* 86 NY2d 710 [1995]).

Accordingly, Deutsche Bank made a prima facie case that Aozora was on inquiry notice of its fraud claims before June 18, 2011 (that is, two years before it filed the summons with notice). The burden then shifted to Aozora to establish that, even if it had exercised reasonable diligence, it could not have discovered the basis for its claims before that date.

But Aozora failed to carry its burden, as there was a wealth of public information that should have put it on inquiry notice of the alleged fraud. First, in 2008, Blue Edge was downgraded to junk status and plaintiff incurred substantial losses on its investment. Second, there was considerable publicity about the subprime mortgage crisis from news reports, investor lawsuits, and government investigations well before June 2011. Indeed, by April 2011, defendants had been sued multiple times in connection with RMBS and CDOs, including in connection with a Deutsche Bank CDO known as Gemstone, which plaintiff discusses in its complaint as involving wrongdoing by defend-

---

**3.** On February 17, 2015, Aozora moved to reargue the IAS court's dismissal of its fraud claims, or for leave to file an amended complaint. On March 31, 2015, the IAS court denied that motion.

ants "identical" to that involved with respect to Blue Edge (see *Ghandour*, 213 AD2d at 304, 306 [the plaintiff was on notice where his brother made the same investments and commenced a timely fraud action six years earlier]).

Third, one of the most significant sources of public information putting plaintiff on notice of its fraud claims is the Senate Report and its associated emails, which actually form the centerpiece of plaintiff's complaint. In fact, the Senate Report contains a 45-page section on Deutsche Bank entitled "Running the CDO Machine: Case Study of Deutsche Bank." Taken with all the other information available in the public domain, the Senate Report is more than sufficient to have placed Aozora on inquiry notice of possible fraud by April 2011 at the latest (see *Aldrich*, 52 AD3d at 436; cf. *CSAM Capital, Inc. v Lauder*, 67 AD3d 149 [1st Dept 2009]). That Blue Edge was not mentioned by name in the Senate Report does not change this result. Aozora had more than $430 million invested in Blue Edge and other CDOs; it could have, and should have, considered whether Blue Edge's underlying assets fell within the Senate Report's ambit.

Also significant is that Aozora's counsel actually did investigate Aozora's potential claims in 2012 or 2013. However, Aozora provides no explanation for why it could not have performed that same investigation before June 18, 2011, when losses from the subprime mortgage crisis were receiving considerable attention in the press (see *CIFG Assur. N. Am.*, 128 AD3d at 608).

The proposed amended complaint does not cure the statute of limitations defects in the original complaint, as it does not gainsay that Aozora was on inquiry notice of alleged fraud more than two years before it filed the summons with notice (see *K-Bay Plaza, LLC v Kmart Corp.*, 132 AD3d 584, 590 [1st Dept 2015]; *Meimeteas v Carter Ledyard & Milburn LLP*, 105 AD3d 643 [1st Dept 2013]). Concur—Acosta, J.P., Renwick, Andrias and Moskowitz, JJ.