■ Aozora Bank, Ltd., Appellant, v Credit Suisse Group et al., Respondents. [40 NYS3d 407]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered April 22, 2015, which, to the extent appealed from as limited by the briefs, granted defendants' motions to dismiss the fraud, aiding and abetting fraud, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation claims as against them, unanimously affirmed, without costs.

In May 2007, plaintiff Aozora Bank, Ltd., a sophisticated investor in the subprime market, purchased $40 million of notes issued by the Jupiter V CDO, an investment vehicle collateralized by residential mortgage backed securities and

other assets. Defendant Credit Suisse Securities (USA) LLC served as the arranger of Jupiter V, and defendant Harding Advisory LLC was the collateral manager. Like many CDO investments, Jupiter V failed during the financial crisis, resulting in Aozora's loss of all of its principal investment.

In June 2013, more than six years after it purchased the Jupiter V notes, Aozora commenced this action alleging that Credit Suisse and Harding fraudulently induced it to invest in Jupiter V. According to Aozora, it was told in marketing materials and various deal documents that Harding would serve as the collateral manager, and that it would use its independent judgment to select the collateral and to actively manage the assets. In fact, Aozora alleges, the collateral was selected largely by Credit Suisse, in collusion with Harding, and Jupiter V was used to dump toxic assets off Credit Suisse's own balance sheet. Credit Suisse and Harding filed motions to dismiss Aozora's complaint alleging, inter alia, that it was barred by the statute of limitations. In a decision entered April 22, 2015, the motion court dismissed the complaint in its entirety.

Under CPLR 213 (8), a fraud claim must be brought within the longer of "six years from the date the cause of action accrued or two years from the time the plaintiff . . . could with reasonable diligence have discovered [the fraud]." Aozora concedes that this action was commenced more than six years after the cause of action accrued, i.e., when Aozora purchased the notes. Thus, to be timely, the action must have been brought within two years from the time Aozora discovered the alleged fraud, or from when it could have discovered it in the exercise of reasonable diligence.

"[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him" (*Gutkin v Siegal*, 85 AD3d 687, 688 [1st Dept 2011] [internal quotation marks omitted]). Defendants must make a prima facie showing that Aozora was on such inquiry notice of its fraud claims more than two years before the action was commenced. The burden then shifts to Aozora to establish that even if it had exercised reasonable diligence, it could not have discovered the basis for its fraud claims (*Aozora Bank, Ltd. v Deutsche Bank Sec. Inc.*, 137 AD3d 685, 689 [1st Dept 2016]).

Applying these principles, the motion court properly determined that the fraud and misrepresentation claims were time-

barred. The publicly available information identified by defendants, considered in its totality, established prima facie that Aozora was on inquiry notice more than two years before the June 2013 commencement of the action (*see CIFG Assur. N. Am., Inc. v Credit Suisse Sec. [USA] LLC*, 128 AD3d 607, 608 [1st Dept 2015], *lv denied* 27 NY3d 906 [2016]). First, Aozora sustained substantial investment losses in 2007 and 2008, and by August 2008, the Jupiter V notes in which Aozora invested had been downgraded from the highest possible Moody's rating to the lowest (*see Aozora Bank, Ltd. v Deutsche Bank Sec. Inc.*, 137 AD3d at 689 [losses that a plaintiff sustains is a factor in determining whether there was notice of possible fraud]; *Gutkin v Siegal*, 85 AD3d at 688 [a reasonable investor, upon learning that he lost millions of dollars, would have investigated further]; *In re Morgan Stanley Mtge. Pass-Through Certificates Litig.*, 2010 WL 3239430, 2010 US Dist LEXIS 84146 [SD NY, Aug. 17, 2010, Master File No. 09 Civ 2137(LTS)(MHD)] [finding inquiry notice based on, inter alia, ratings downgrades]).

Next, in March 2009, a complaint was filed in the Southern District of New York alleging misconduct by Harding similar to that alleged in Aozora's complaint here. Specifically, the federal complaint alleged that Harding did not independently select collateral for a Citigroup CDO, but instead included low-quality assets that Citigroup wanted to rid itself of. This federal lawsuit was discussed in a 2010 article in *Bloomberg*, which also described another lawsuit alleging that Harding was "beholden" to a bank "that allowed it to dump unwanted holdings into their deals."

There were other published reports that should have put a sophisticated financial investor like Aozora on notice of a possible fraud. In March 2009, Time magazine published an article about Jupiter V entitled "One Bad Bond," reporting that 59% of its investments were worthless. The article described Jupiter V as a "toxic asset" and "one of those financial [instruments] at the root of the economic meltdown." In 2010, Michael Lewis's best-selling book, The Big Short: Inside the Doomsday Machine, was published. That book contained allegations presenting a negative portrayal of Harding in its management of CDOs.

Viewed in its totality, the above publicly-available information put Aozora on inquiry notice more than two years before this action was commenced. Aozora failed to satisfy its burden to show that if it had exercised reasonable diligence, it could not have discovered the basis for its claims. "Because [Aozora] possessed information suggesting the probability that it had

been defrauded, and failed to conduct an inquiry at that time, knowledge of the fraud is imputed" (*CIFG Assur.*, 128 AD3d at 608). Although Aozora ultimately conducted an investigation in 2013 into Harding's alleged misconduct, it offers no explanation why it could not have performed that investigation earlier (*see Aozora Bank*, 137 AD3d at 690).

The motion court properly found that the breach of the implied covenant of good faith and fair dealing claims are barred by the six-year statute of limitations. On appeal, Aozora contends that Harding's failure to manage Jupiter V's portfolio on an ongoing basis constitutes a breach of a recurring obligation. However, the complaint does not allege any continuing or recurring breaches. Rather, it alleges that Harding breached the covenant when it ceded control of Jupiter V's portfolio selection to Credit Suisse and then concealed this fact. Because these alleged acts took place more than six years before this action was filed, the claim is time-barred.\* Concur—Friedman, J.P., Richter, Feinman, Kapnick and Kahn, JJ.

---

\* Aozora's appellate briefs make no argument that this cause of action survives with respect to Credit Suisse. In any event, the claim as against Credit Suisse is similarly time-barred.