17-2319-cv
Sejin Precision Indus. Co. Ltd. et al. v. Citibank, N.A., et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of March, two thousand eighteen.

PRESENT:
> JOHN M. WALKER, JR.,
> PETER W. HALL,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges.*

---

SEJIN PRECISION INDUSTRY CO., LTD.; MTEKVISION CO., LTD.; SUNGJIN TEXTILE INDUSTRY CO. LTD.; SAMHWAN STEEL CO., LTD.; TECHNO ELECTRONICS CO., LTD.; AND IL SHIN SPINNING CO. LTD.,

> *Plaintiffs-Appellants*,

> v.                                     No. 17-2319-cv

CITIBANK, N.A.; CITIGROUP, INC.; CITIBANK OVERSEAS INVESTMENT CORPORATION; CITICORP HOLDINGS INC.; AND CITIGROUP GLOBAL MARKETS INC.,

> *Defendants-Appellees*.

---

| | |
|---|---|
| For Appellants: | Alan L. Poliner, Kim & Bae, P.C., Fort Lee, New Jersey. |
| For Appellees: | DANIEL M. PERRY, Milbank, Tweed, Hadley & McCloy LLP (Jed M. Schwartz, Taryn J. Gallup, Daniel B. Kaplan, *on the brief*), New York, New York. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on June 30, 2017, is **AFFIRMED**.

Plaintiffs Sejin Precision Industry Co. Ltd., Mtekvision Co., Ltd., Sungjin Textile Industry Co., Ltd., Samhwan Steel Co., Ltd., Techno Electronics Co., Ltd., and Il Shin Spinning Co., Ltd. (collectively, "Plaintiffs") are South Korean manufacturers that export their products. They receive payment for their goods in various currencies, including U.S. dollars ("USD"), and exchange those currencies for South Korean won ("KRW"). As a result, Plaintiffs bear the risk arising from fluctuations in the USD-KRW exchange rate.

To minimize their exposure to fluctuations in that exchange rate, Plaintiffs entered into contracts with non-party Citibank Korea, Inc. ("CKI"). These financial instruments were called "KIKOs," which stands for "knock-in, knock-out." Plaintiffs allege that Defendant Citigroup, Inc. and its subsidiaries Defendants Citibank, N.A., Citibank Overseas Investment Corporation, Citicorp Holdings Inc., and Citigroup Global Markets Inc. (collectively, "Defendants") designed the KIKOs and marketed them to unsophisticated businesses in Asia through subsidiaries such as CKI.

Between November 2004 and March 2008, Plaintiffs entered into several KIKO contracts with CKI. Throughout 2008, the dollar appreciated considerably against the won. As a result, from December 2007 through August 2010, Plaintiffs suffered millions of dollars in losses when

2

CKI exercised its option to exchange won for more valuable dollars.[1]

On September 2, 2016, Plaintiffs initiated this action against Defendants. The thrust of Plaintiffs' claims on appeal is that CKI duped them into purchasing KIKOs by falsely stating that the KIKOs would serve as a hedge because CKI believed that the dollar would weaken against the won. Plaintiffs further allege that CKI sold them KIKOs without disclosing that its affiliates were engaged in attempts to manipulate benchmark foreign exchange rates, including manipulation that affected the USD-KRW exchange rate. The district court dismissed Plaintiffs' claims because they fell outside New York's statute of limitations period. Alternatively, the district court held that Plaintiffs failed to state a plausible claim for relief.

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim. *Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Likewise, at the pleading stage, a complaint is subject to dismissal "if it appears on the face of the complaint that the cause of action has not been brought within the statute of limitations." *Santos v. Dist. Council of United Bhd. of Carpenters, AFL-CIO*, 619 F.2d 963, 967 n.4 (2d Cir.

---

[1] *See* Cmpl. at ¶ 655 (alleging that Sejin experienced losses between December 2007 and February 2008); *id.* at ¶ 750 (alleging that CKI made its last trade under a KIKO contract with Mtek on January 21, 2010); *id.* at ¶¶ 786, 794, 801, 804 (alleging that, in August 2007, Sungjin entered into three KIKO contracts that had at most three-year terms, and thus CKI's exercise of its options under those contracts must have taken place before or during August 2010); *id.* at ¶ 867 (alleging that Samhwan suffered KIKO-related losses in 2009); *id.* at ¶¶ 917–20 (alleging that Techno experienced losses between March and June 2008); *id.* at ¶ 970 (alleging that Ilshin experienced losses in March, September, and October of 2008).

3

1980); *see also Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999). In undertaking this review, we assume the parties' familiarity with the facts and procedural history, which we reference only as necessary to explain our decision to affirm the district court's decision.

Plaintiffs are South Korean companies that allege that they suffered losses in South Korea. To sustain a claim for fraud under New York law, therefore, Plaintiffs' fraud claims must be timely under the statutes of limitations of both New York and South Korea. N.Y. C.P.L.R. § 202. In New York, the limitations period for a fraud claim is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." *Id.* § 213(8). Plaintiffs' complaint was filed on September 2, 2016. To fall within the six-year period, Plaintiffs' claims must have accrued after September 2, 2010. To be saved by the two-year discovery rule, Plaintiffs' allegations must demonstrate that they could not have discovered Defendants' fraud with reasonable diligence before September 2, 2014. Applying this standard, we hold that Plaintiffs' claims are barred by New York's statute of limitations.

### A. Six-Year Accrual Period

Plaintiffs entered into KIKO contracts with CKI between November 2004 and March 2008. Plaintiffs allege that they suffered losses on the KIKO contracts from December 2007 through August 2010. Accepting Plaintiffs' allegations as true, all of Plaintiffs' fraud claims accrued outside the six-year limitations period. *Compare Prichard v. 164 Ludlow Corp.*, 854 N.Y.S.2d 53, 54 (1st Dep't 2008) (finding in a cause of action for fraudulent inducement that § 213(8)'s six-year period began when the plaintiffs purchased the stocks at issue), *with N.Y.C. Transit Auth. v. Morris J. Eisen, P.C.*, 715 N.Y.S.2d 232, 237 (1st Dep't 2000) ("[A] cause of action for fraud

4

cannot accrue until every element of the claim, including injury, can truthfully be alleged."), *abrogated on other grounds as recognized in Melcher v. Green berg Traurig, LLP*, 988 N.Y.S.2d 101, 104 (2014).

### B. Discovery Rule

Nor can Plaintiffs rely on New York's discovery rule to resuscitate their stale claims. As noted above, under the discovery rule fraud claims are timely if brought within two years of when the plaintiff "discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). "The test as to when fraud should with reasonable diligence have been discovered is an objective one." *Gutkin v. Siegal*, 926 N.Y.S.2d 485, 486 (1st Dep't 2011) (quoting *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983)).

> [W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.

*Id.* (quoting *Armstrong*, 699 F.2d at 88). For instance, public reports of and lawsuits alleging fraud "are sufficient to put a plaintiff on inquiry notice of fraud." *Aozora Bank, Ltd. v. Deutsche Bank Secs. Inc.*, 29 N.Y.S.3d 10, 14 (1st Dep't 2016). Similarly, evidence of losses may put plaintiffs on inquiry notice. *Id.*

Applying this standard, Plaintiffs cannot satisfy the discovery rule because they had ample opportunity to discover the basis for their fraud claims before September 2, 2014. Plaintiffs allege that they suffered millions of dollars in losses on their KIKO contracts from 2007 to 2010. In response, Plaintiffs filed lawsuits in South Korea against CKI, asserting claims arising from the KIKOs. These losses and subsequent lawsuits demonstrate that Plaintiffs were on notice that

5

their losses stemmed from potentially fraudulent conduct. Plaintiffs had a duty therefore to investigate not just CKI's conduct but also Defendants' involvement in the KIKO products.

Moreover, while Plaintiffs were litigating against CKI in South Korea, another South Korean manufacturer, Simmtech Co. ("Simmtech"), filed lawsuits in the United States against Defendants alleging that the KIKO products were fraudulent, *see Simmtech Co. v. Citibank, N.A.*, No. 13-cv-6768 (KBF), 2016 WL 4184296 (S.D.N.Y. Aug. 3, 2016), *aff'd*, 697 F. App'x 35 (2d Cir. 2017), and that Defendants engaged in market manipulation that affected the USD-KRW exchange rate, *see Simmtech Co. v. Barclays Bank PLC*, 13-cv-7953 (LGS) (S.D.N.Y. Nov. 8, 2013), ECF No. 1. Simmtech's allegations were available in publicly filed documents and were reported in the South Korean press.[2] *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424–25 (2d Cr. 2008) (holding that the district court did not err in taking judicial notice of press coverage, prior lawsuits, and regulatory filings).

These facts indicate that with reasonable diligence Plaintiffs could have discovered Defendants' conduct at least three years before Plaintiffs filed their complaint. Plaintiffs suffered substantial losses and filed several lawsuits against CKI, and Defendants' relationship to the KIKO products was publicly known as early as July 2013, when Simmtech filed its first complaint. The discovery rule, therefore, does not render Plaintiffs' claims timely.

---

[2] *See, e.g.*, Na Jeong-ju, *Korean firm sues global banks*, The Korea Times (Nov. 18, 2013), http://bit.ly/2EQkdm2 (last visited Feb. 21, 2018); Kim Yon-se, *Korean firms sue IBs in U.S. over FX rigging*, The Korea Herald (Nov. 18, 2013), http://bit.ly/2EsRdD2 (last visited Feb. 21, 2018); Hyun Jin Park, *Great damage caused by foreign exchange rate manipulation at a global financial company*, Dong-A Ilbo (Nov. 19, 2013), http://bit.ly/2EbOkDn (last visited Feb. 21, 2018).

We have considered Plaintiffs' remaining arguments on appeal and find them to be without

merit. We **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court