Matter of People of the State of New York v Northern Leasing Sys., Inc. (2021 NY Slip Op 00914)





Matter of People of the State of New York v Northern Leasing Sys., Inc.


2021 NY Slip Op 00914


Decided on February 11, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 11, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber,J.P.,
Angela M. Mazzarelli
Lizbeth González
Saliann Scarpulla JJ.


Index No. 450460/16 Appeal No. 12898,12899,12900,12901 Case No. 2020-02755, 2020-02756, 2020-02757, 2020-02758, 2020-02791 

[*1]In the Matter of The People of the State of New York, by Letitia James, etc et al. Petitioners-Respondents-Appellants,
v
Northern Leasing Systems, Inc., et al., Respondents-Appellants-Respondents.



Respondents appeal from the orders of the Supreme Court, New York County (Lucy Billings, J.), entered on or about June 8, 2020, which, insofar as appealed from as limited by the briefs, granted petitioners' motion for summary determination of the petition pursuant to Executive Law § 63(12), Business Corporation Law § 1101(a)(2) and CPLR 5015(c), denied the Northern Respondents' motions for discovery and a trial or evidentiary hearing, and denied the Attorney Respondents' motion for summary judgment dismissing the petition as against them.




Rottenberg Lipman Rich, P.C., New York (Robert A. Freilich and Mark M. Rottenberg of counsel), for Joseph I. Sussman, Joseph I. Sussman, P.C. and Eliyahu R. Babad, appellants-respondents.
Dechert LLP, New York (Andrew J. Levander, Neil Steiner and Patrick Andriola of counsel) and Moses & Singer LLP, New York (Robert D. Lillienstein and Scott E. Silberfein of counsel) for Northern Leasing Systems, Inc., Lease Finance Group LLC, MBF Leasing LLC, Lease Source-LSI, LLC, Golden Eagle Leasing LLC, Pushpin Holdings LLC, Jay Cohen and Neil Hertzman, respondents-appellants.
Letitia James, Attorney General, New York (Ester Murdukhayeva and Steven C. Wu of counsel), for the State of New York and Letitia James, respondents-appellants.



WEBBER, J.P. 


In April 2016, petitioners, the Attorney General (AG) and the Deputy Chief Administrative Judge for New York City Courts, commenced the instant proceeding against respondents Northern Leasing Systems, Inc., Lease Finance Group LLC, MBF Leasing LLC, Lease Source—LSI, LLC, Golden Eagle Leasing LLC, Pushpin Holdings LLC, Jay Cohen, and Neil Hertzman (Northern Respondents), alleging that they engaged in repeated and persistent fraud in that they tricked individuals, many of whom were small business owners, into entering into unconscionable equipment finance leases (EFLs) for credit card processing equipment.[FN1] Although the action was commenced in 2016, the acts complained of date from 2010.
The following is drawn from an extensive and lengthy record, which includes the petition and sworn affirmations by some 873 individuals who have filed complaints with the AG's office, as well as affidavits by the then Deputy Chief Administrative Judge and New York Civil Court employees, documentary materials, respondents' answers, affidavits by respondents' officers and employees, and other records. Factual Background
According to petitioners, banks would hire the Northern Respondents' affiliated sales representatives, also known as "Independent Sales Organizations" (ISO), to market and sell the banks' credit card processing services to consumers and small businesses, and, at the same time, those sales representatives, acting on behalf of the Northern Respondents, would lease credit card processing equipment that was not provided by the banks to the consumers and businesses via the EFLs. The sales representatives misrepresented to those consumers the nature and terms of the EFLs and failed to disclose that they were entering into contracts with two different companies, as well as that they were entering into an equipment lease. Many consumers did not understand the nature of the EFLs they signed.
The Northern Respondents trained their affiliated ISO sales representatives and provided them with specific EFL forms and other written materials. Those sales representatives would target owners of small businesses such as flower shops, hair salons, bodegas, and small restaurants and bars all over the country. According to petitioners, many of the targeted business owners were over 65 years old, disabled, new immigrants, or not proficient in English. The consumers were given little opportunity to review the EFLs before signing and were not provided with copies of the EFLs. Following the signing of the EFLs by the consumers, the sales representatives were unreachable. Petitioners also allege that in some instances, the sales representatives forged the names of the consumers or unilaterally altered terms of the EFLs after they were signed.
The EFLs contained hidden, one-sided onerous terms, including a "no-cancellation provision" and an automatic month-to-month renewal provision. It is also alleged that the Northern Respondents would also make it exceedingly [*2]difficult for individuals to cancel an EFL or return unwanted equipment and that they would continue collecting monthly payments after the expiration of initial EFL terms, typically for 48 months, even though the amounts paid grossly exceeded the value of the equipment, which typically was only a few hundred dollars. The EFLs also contained a personal guaranty provision, requiring all individual signers to personally guarantee the EFLs. The EFLs contained a forum selection clause requiring customers to consent to the jurisdiction of New York City Courts regardless of where the lessee was physically located and an alternate service provision that allowed respondents to initiate legal proceedings by sending certified mail to the mailing address on the EFL or the individual guarantor's current or last known address.
Petitioners allege that when lessees refused to pay, the Northern Respondents and their lawyers, Joseph I. Sussman, P.C., Joseph I. Sussman, and Eliyahu R. Babad (Attorney Respondents) would harass the lessees and guarantors and threaten litigation to collect on the debts, threaten the individual guarantors with harm to their personal consumer credit scores, and employ harassing debt collection practices aimed at individuals. They commenced actions in New York City Civil Court in New York County (New York County Civil Court), making it difficult for nonresidents to appear (more than 95% of consumers sued by the Northern Respondents resided outside of New York), resulting in thousands of dollars of default judgments against them, they obtained default judgments by serving summonses and complaints at addresses they knew were outdated, and they filed lawsuits that were untimely.
According to petitioners, since 2010, the Northern Respondents have filed more than 30,000 actions in New York County Civil Court and obtained more than 19,000 default judgments, accounting for a large portion of the total general, commercial, and consumer debt filings and default judgments in New York County Civil Court.[FN2] Consumers made 1,643 complaints to the AG for the period from January 1, 2010 to December 31, 2015.
The State brought this special proceeding against respondents under Executive Law § 63(12) for engaging in repeated and persistent fraud and under Business Corporation Law (BCL) § 1102(a)(2) to have Northern Leasing System dissolved, seeking to permanently enjoin respondents from engaging in the above-described deceptive business practices and from conducting any business or performing any act in and from the State of New York involving equipment finance leasing and/or debt collection (or, alternatively, provide a performance bond), to rescind all of the EFLs obtained by fraud or misrepresentation, and to direct respondents to pay restitution, damages, disgorgement, civil penalties, and costs, and provide an accounting. The Administrative Judge seeks to vacate thousands of default judgments that respondents have obtained in New York County Civil [*3]Court, to stay all executions to collect on those judgments, and to compel respondents to pay restitution of all amounts collected based on those judgments, pursuant to CPLR 5015(c) and (d). Procedural History
The Northern and Attorney Respondents separately moved to dismiss the petition. The motion court denied the Northern Respondents' motion but granted the Attorney Respondents' motion to dismiss the cause of action based on violations of General Business Law § 349. On appeal, this Court affirmed the denial of the Northern Respondents' motion to dismiss but reversed the granting of the Attorney Respondents' motion to dismiss (Matter of People v Northern Leasing Sys., Inc., 169 AD3d 527 [1st Dept 2019]). While that appeal was pending, the Northern Respondents moved for disclosure and a trial, and petitioners sought a summary determination against the Northern Respondents. Following our decision, the Attorney Respondents moved for summary judgment, and petitioners sought a summary determination against the Attorney Respondents.
Discussion
We find that Supreme Court correctly denied respondents' motions and granted petitioners' motion for summary determination of their claims, as no material issues of fact exist warranting a trial (see e.g. Matter of People v Trump Entrepreneur Initiative LLC, 137 AD3d 409, 418-419 [1st Dept 2016], appeal withdrawn 31 NY3d 1011 [2018]). The Northern Respondents' evidence failed to raise factual issues as to their liability.
As a threshold matter, Supreme Court properly denied the Northern Respondents' request for additional discovery, finding that there was no showing of need. "A special proceeding, as authorized by Executive Law § 63(12), is intended as an expeditious means for the Attorney General to prevent further injury and seek relief for the victims of business fraud" (People v Apple Health & Sports Clubs, 206 AD2d 266, 268 [1st Dept 1994], lv dismissed in part, denied in part 84 NY2d 1004 [1994]). Contrary to the Northern Respondents' assertions, they are not automatically entitled to conduct depositions or to engage in other discovery (see CPLR 408; Hirsch v Stewart, 63 AD3d 74, 81 [1st Dept 2009]; Matter of Allocca v Kelly, 44 AD3d 308, 309 [1st Dept 2007]; Stapleton Studios v City of New York, 7 AD3d 273, 274-275 [1st Dept 2004]). Discovery is disfavored in a special proceeding and is permitted only on leave of court upon a showing of "ample need" (Matter of Shore, 109 AD2d 842, 843—844 [2d Dept 1985] [internal quotation marks omitted]) or "unusual circumstances" (State of New York v Bridgehampton Rd. Races Corp., 44 AD2d 725, 726 [2d Dept 1974]).
The Northern Respondents offered no explanation as to why there was need for additional discovery. Specifically, they failed to explain their request for deposing more than 800 individuals who had already submitted detailed affidavits, which were supported by documentary evidence and to whose lease files the Northern Respondents presumably possess [*4]direct access.
Contrary to the arguments set forth by the Northern and Attorney Respondents, Supreme Court properly considered the credible, authenticated and admissible evidence and found that a trial was not required since there were no triable issues of fact. The standard for determining whether respondents have raised a triable issue of fact is the same as that applied on a motion for summary judgment (Matter of Port of N.Y. Auth. [62 Cortlandt St. Realty Co.], 18 NY2d 250, 255 [1966], cert denied 385 US 1006 [1967]; Matter of Northwest 5th & 45th Realty Corp. v Mitchell, Maxwell & Jackson, Inc., 164 AD3d 1158, 1158 [1st Dept 2018]; Karr v Black, 55 AD3d 82, 86 [1st Dept 2008], lv denied 11 NY3d 712 [2008]; Matter of People v Applied Card Sys., Inc.,27 AD3d 104, 106 [3d Dept 2005], lv dismissed 7 NY3d 741 [2006]).
The record shows that in response to petitioners' motion, the Northern Respondents submitted the EFLs signed by the 873 complainants, the Northern Respondents' contracts with the 352 different ISOs from which they purchased those 873 EFLs, and affidavits by their chief executive officer, Jay Cohen, president, Ron Kincheloe, vice president of collections and customer service, Neil Hertzman, and director of information technology, Oksana Arkhipova. These documents purportedly explain and prove the propriety of their business practices and contradict the evidence submitted by petitioners. The Attorney Respondents submitted an affidavit by respondent Joseph Sussman and a "Global Appendix" describing the claims against, and defenses asserted by, each of the guarantors who had submitted affidavits with the petition, upon which the Attorney Respondents purportedly relied to establish a good faith basis to commence each action against the guarantors. Supreme Court properly considered these submissions and found the Northern Respondents' evidence, including the welcome letters, receipts, and logs they maintained, purportedly showing that the complainant-lessees signed the EFLs and accepted delivery of equipment, were not authenticated or otherwise admissible.
Moreover, as noted by Supreme Court, these documents did not support the Northern Respondents' attempts to refute the complainants' claims. The affidavits by Cohen and Kincheloe, while stating the Northern Respondents' procedures for customer service and investigation of forgery, fraud, and misrepresentation claims, did not establish that their employees followed those procedures. The Northern Respondents presented no affidavit or deposition testimony by any ISO employees to rebut the complainants' consistent accounts, and they did not demonstrate a procedure for verifying through the ISOs that they presented validly executed EFL applications.
Supreme Court correctly found that petitioners demonstrated respondents' liability under Executive Law § 63(12). Under Executive Law § 63(12), "the test for fraud is whether the targeted act has the capacity or tendency to deceive or creates [*5]an atmosphere conducive to fraud" (People v General Elec. Co., 302 AD2d 314, 314 [1st Dept 2003]). "Executive Law § 63(12) was meant to protect not only the average consumer, but also the ignorant, the unthinking, and the credulous" (id. [internal quotation marks omitted]). "[P]ublic reports and lawsuits of alleged fraud are sufficient to put a plaintiff on inquiry notice of fraud" (Aozora Bank, Ltd. v Deutsche Bank Sec. Inc., 137 AD3d 685, 689 [1st Dept 2016]). "All that is required to defeat a motion to dismiss a fraud claim for lack of scienter is a rational inference of actual knowledge" (IKB Intl. S.A. v Morgan Stanley, 142 AD3d 447, 450 [1st Dept 2016] [internal quotation marks omitted]).
The Northern Respondents' failure to oversee the ISOs and to assess any meaningful penalty against them for presenting a fraudulent EFL created an enterprise conducive to fraud. The forgeries, material misrepresentations, and noncancelable EFLs even when the leased equipment is never delivered, does not function, or is returned would never occur but for the Northern Respondents creating their market for the ISOs, through their commissions, and then ignoring the ISOs' conduct. Given the 837 affidavits of lessees' complaints about similar ISO misconduct, the Northern Respondents were on notice that securing EFLs through the ISOs was conducive to fraud. As stated by Supreme Court, Jay Cohen, Northern Leasing Systems' chief executive officer, and Neil Hertzman, vice president of customer service and collections, as corporate officers, are liable for the Northern Respondents' fraud if they participated in the fraud (see Polonetsky v Better Homes Depot, 97 NY2d 46, 55 [2001]) or received actual notice of the fraud (see People v Apple Health & Sports Clubs, 80 NY2d 803, 807-808 [1992]). Cohen, as Northern Leasing Systems' chief executive officer, stands in the same position and is liable to the same extent as Northern Leasing Systems. Further, since Hertzman responded to lessees' complaints, he obtained actual knowledge of the likely misleading practices and is liable for participation in that scheme (see People v Greenberg, 21 NY3d 439, 447 [2013]; People v Apple Health & Sports Clubs, 206 AD2d at 267). This knowledge sustains petitioners' fraud claim (id.; AIG Fin. Prods. Corp. v ICP Asset Mgt., LLC, 108 AD3d 444, 446-447 [1st Dept 2013]).
Supreme Court's finding of an absence of agency or unconscionability requires neither additional discovery nor a trial. As stated above, there must be a showing that there is a need for additional discovery. As noted by Supreme Court, a trial is not warranted on this issue, as the Northern Respondents' knowledge of the ISOs' actions and failure to act inculpated them, which is the determining factor. Further, contrary to the Northern Respondents' contentions, this is not inconsistent with our earlier decision upholding the denial of the Northern Respondents' motion to dismiss on the basis that petitioners had sufficiently [*6]alleged agency and unconscionability (Northern Leasing Sys., 169 AD3d at 529). In our earlier decision, we found that the petition sufficiently pleaded actual authority, alleging that the Northern Respondents trained the ISO representatives, provided them with the specific lease forms, offering detailed instructions and materials about how to complete the forms, and paid commissions for each lease solicited from a customer. Since the allegations of training and provision of forms do not necessarily mean the authorization of the representatives' deceptive acts, the petition also alleged that the Northern Respondents ratified these acts by retaining the benefits of the unauthorized actions with knowledge of the material facts (see Standard Funding Corp. v Lewitt, 89 NY2d 546, 552 [1997]; Matter of New York State Med. Transporters Assn. v Perales, 77 NY2d 126, 131 [1990]). Specifically, the petition alleged that respondents knew of the various misrepresentations and misconduct engaged in by the sales representatives, and yet approved and accepted the lease agreements and later sought to enforce them by commencing debt collection actions.
Supreme Court properly found that the Northern Respondents' conduct falls within the "sham exception" to the Noerr-Pennington doctrine. The Noerr-Pennington doctrine protects the right under the First Amendment to the United States Constitution to petition the government for governmental action, including through litigation (see Villanova Estates, Inc. v Fieldston Prop. Owners Assn., Inc., 23 AD3d 160, 161 [1st Dept 2005]) and activity incidental to litigation (see Nineteen Eighty-Nine, LLC v Icahn Enters. L.P., 99 AD3d 546, 547 [1st Dept 2012], lv denied 20 NY3d 863 [2013]). The parties seeking the benefit of the doctrine bear the initial burden of demonstrating the doctrine's applicability so as to bar petitioners' claims (see id.; Arts4All, Ltd. v Hancock, 25 AD3d 453, 454 [1st Dept 2006], lv dismissed 6 NY3d 891 [2006]).
The sham exception to the Noerr-Pennington doctrine encompasses the abuse of a governmental process, rather than its outcome (Singh v Sukhram, 56 AD3d 187, 192 [2d Dept 2008]). To establish the sham exception to the doctrine, petitioners must prove that respondents lacked a genuine interest in seeking governmental action (see Shapiro v Tardalo, 167 AD3d 555, 555 [1st Dept 2018]; Villanova Estates, 23 AD3d at 161; Singh, 56 AD3d at 193) and that their use of the litigation process in that quest was objectively baseless (Northern Leasing Sys., 169 AD3d at 530; I.G. Second Generation Partners, L.P. v Duane Reade, 17 AD3d 206, 208 [1st Dept 2005]; Singh, 56 AD3d at 192).
We held in our prior decision that allegations that the Northern Respondents created legal obligations through misrepresentations and fraud and then attempted to enforce those obligations through abusive pre-litigation and litigation practices sufficiently demonstrated that the Northern Respondents' debt collection activities [*7]and procuring of default judgments were "objectively baseless" (Northern Leasing Sys., 169 AD3d at 530).
On the instant motion, Supreme Court found that the Northern Respondents chose methods for procuring EFLs that created an enterprise conducive to fraud; that based on the sheer numbers of complaints, they are charged with knowledge of the ISOs' persistent misconduct; and that they ignored or overlooked that conduct. The Northern Respondents' debt collection activities, through threats to injure credit ratings and to pursue litigation and through actual litigation, resulting in a high rate of default judgments, render the debt collection activities objectively baseless.
For similar reasons, Supreme Court correctly determined that the Attorney Respondents' conduct falls within the sham exception to the Noerr-Pennington doctrine and that the Attorney Respondents are liable under Executive Law § 63(12).
The Northern Respondents' contention that Supreme Court's decision erroneously ignores attorneys' obligation to represent their clients zealously and the protections afforded to do so under the Noerr-Pennington doctrine is without merit. It is well established that the duty of zealous representation has its limits (see Honzawa v Honzawa, 268 AD2d 327, 331 [1st Dept 2000]). In this particular case, where the evidence supports the Attorney Respondents' notice of the Northern Respondents' fraud and deception under Executive Law § 63(12) and advanced that interest, their petitions for debt collection go beyond attorneys' duty of zealous representation.
Finally, contrary to the Northern Respondents' argument, petitioners' cross appeal is timely, since under Executive Order 202.8, CPLR deadlines were suspended due to the COVID-19 pandemic at the time petitioners were originally required to file their cross appeal.
Accordingly, the orders of the Supreme Court, New York County (Lucy Billings, J.), entered on or about June 8, 2020, which, insofar as appealed from as limited by the briefs, granted petitioners' motion for summary determination of the petition pursuant to Executive Law § 63(12), Business Corporation Law § 1101(a)(2) and CPLR 5015(c), denied the Northern Respondents' motions for discovery and a trial or evidentiary hearing, and denied the Attorney Respondents' motion for summary judgment dismissing the petition as against them, should be affirmed, without costs.
Orders, Supreme Court, New York County (Lucy Billings, J.), entered on or about June 8, 2020, affirmed, without costs.
Opinion by Webber, J.P. All concur.
Webber, J.P., Mazzarelli, González, Scarpulla, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 11, 2021



Footnotes

Footnote 1: This proceeding is the State's second enforcement action against the Northern Respondents for engaging in fraudulent and deceptive practices harming consumers. In 2012, the AG's office commenced a proceeding against them for withdrawing unauthorized fees from the bank accounts of nearly 110,000 former customers whose leases had long expired or who had already fully paid. That proceeding resulted in a Consent Order and Judgment on or about February 28, 2013 enjoining them from engaging in any further deceptive, fraudulent, or illegal practices. They have also been the subject of other state and federal actions involving similar conduct.

Footnote 2: Respondents' filings became so overwhelming that the Civil Court created a separate calendar part to hear only actions brought by the Northern Respondents.