Ambac Assur. Corp. v Countrywide Home Loans, Inc. (2022 NY Slip Op 00805)





Ambac Assur. Corp. v Countrywide Home Loans, Inc.


2022 NY Slip Op 00805


Decided on February 08, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 08, 2022

Before: Renwick, J.P., Mazzarelli, Friedman, Singh, Pitt, JJ. 


Index No. 652321/15 Appeal No. 15242-15242A Case No. 2021-00078, 2021-00386 

[*1]Ambac Assurance Corporation, Plaintiff-Appellant, The Segregated Account of Ambac Assurance Corporation, Plaintiff,
v
Countrywide Home Loans, Inc., Defendant-Respondent.


Patterson Belknap Webb & Tyler LLP, New York (Diana M. Conner of counsel), for appellant.
Simpson Thacher & Bartlett LLP, New York (Rachel S. Sparks Bradley of counsel), for respondent.



Judgment, Supreme Court, New York County (Marcy S. Friedman, J.), entered January 29, 2021, dismissing the complaint, unanimously affirmed, with costs. Appeal from order, same court and Justice, entered December 11, 2020, which granted defendant's motion to dismiss the complaint pursuant to CPLR 3211(a)(5), unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
This action for fraudulent inducement, commenced in July 2015, involves five policies issued by plaintiff Ambac Assurance Corporation in 2005 to insure residential mortgage-backed securities (RMBS) transactions that securitized "pools" of "negative amortization" mortgage loans originated by defendant Countrywide Home Loans, Inc. Ambac contends that, as of October 31, 2014, it had paid, accrued, or expected to pay more than $350 million in policy claims resulting from Countrywide's alleged misrepresentations about the underlying loans in five RMBS transactions (the transactions).
On November 21, 2011, Ambac and Countrywide entered into a tolling agreement, which, as amended, tolled the running of the statute of limitations on unexpired claims related to the transactions through December 31, 2014. The parties do not dispute that the instant action is not timely under New York's six-year limitations period and, to be timely, must have been commenced within two years from the time plaintiff discovered the fraud, or with reasonable diligence would have discovered it (CPLR 213[8]).
Countrywide demonstrated prima facie that Ambac was on inquiry notice of its fraud claims before November 21, 2009, i.e., two years before the parties entered the tolling agreement, based on media reports about Countrywide's fraudulent loan practices, highly publicized litigation between 2006 and early 2009 involving substantially similar claims, and the downgrade of the certificates in the transactions from AAA to junk status by February 2009 (see e.g. Aozora Bank, Ltd. v Deutsche Bank Sec. Inc., 137 AD3d 685, 689 [1st Dept 2016]).
Ambac does not deny that before 2009 it was aware of Countrywide's possible fraud in connection with the transactions, as now alleged in this action; indeed, Ambac publicly announced in 2008 that it would investigate "all areas of fraudulent activity" and attributed losses on the RMBS in its portfolio to the possibility of "poorly underwritten" and "fraudulent loans . . . bundled in the transactions." Rather, Ambac argues that the action is timely because a triable issue exists as to whether it could have sustained a viable fraud action in 2009 when it was not in possession of the relevant loan files and had not yet suffered any losses.
Ambac's argument is unavailing. First, Ambac's claim that it needed loan-level allegations to file a fraud action is undermined by the complaint itself, which makes scant reference to loan-level allegations and focuses primarily on Countrywide's systemic wrongdoing, as revealed in media reports, litigation, and government [*2]investigations prior to 2009. Second, Ambac failed to show that it could not assert a fraud claim without making loan-level allegations or that the belief that loan-level allegations were required motivated its failure to timely bring an action. The record indicates that Ambac did not make any efforts to investigate possible fraud in relation to the transactions, thus casting this argument as nothing more than a post hoc rationalization. Third, there was no requirement that Ambac plead precise damages but only that it allege sufficient damages "from which damages attributable to the defendant's breach may be reasonably inferred" (Financial Guar. Ins. Co. v Morgan Stanley ABS Capital I Inc., 54 Misc 3d 1215[A], 2017 NY Slip Op 50181[U], *9 [Sup Ct, NY County 2017], affd 164 AD3d 1126 [1st Dept 2018]).
Also unavailing is Ambac's contention that Countrywide should be judicially estopped from asserting that public disclosure of its malfeasance put Ambac on inquiry notice based on its purportedly contrary position in Footbridge Ltd. v Countrywide Home Loans, Inc. (2010 WL 3790810, 2010 US Dist LEXIS 102134 [SD NY, Sept. 28, 2010, No. 09 Civ 4050 (PKC)]). Significantly, whether the plaintiff's action was timely under New York law was not an issue before the Footbridge court, which decided a motion to dismiss an RMBS fraud claim under federal and New York law. Given that Footbridge involved different parties, different issues, different legal standards, and different investments, the doctrine of judicial estoppel cannot be invoked here (see generally American Motorists Ins. Co. v O'Brien-Kreitzberg & Assoc., 234 AD2d 30 [1st Dept 1996]). THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 8, 2022